JOHN H. BOYNTON et al., Respondents, *v.* JOHN ANDREWS, Appellant.

63    93
118   376

63    93
123   103

The provision of the general manufacturing act (§ 10, chap. 40, Laws of 1848) making holders of stock not fully paid personally liable to creditors of the corporation, applies to holders of stock issued under authority of the amendatory act of 1853 (chap. 333, Laws of 1853) in payment for property purchased by the corporation.

In an action brought to enforce such liability, the question is, whether the purchase was made in good faith, or at a high valuation with a fraudulent intent to evade the provisions of the statute.

The trustees are authorized by the act of 1853 to purchase and issue stock in payment at a fair valuation, considering the purposes for which the property is to be used and the nature of the business.   An honest overvaluation will not of itself subject the owner of the stock to a personal liability.

Where, however, it appears that property, the value of which is well known and understood or capable of being easily ascertained, is purchased at a price far beyond its real value, this raises a strong presumption of fraud, and unless rebutted by evidence fully explaining the apparent bad faith, the transaction is fraudulent in law, and no question of fact is presented for a jury. ·

(Argued September 30, 1875; decided November 9, 1875.)

APPEAL from judgment of the General Term of the City Court of Brooklyn, affirming a judgment in favor of plaintiffs entered upon a verdict.

This action was brought against defendant as a stockholder of The Empire Manufacturing and Planing Mill Company, a corporation organized under the general manufacturing law of this State (chap. 40, Laws of 1848), to recover a debt due from the corporation upon the ground that the stock was not full paid.

The capital stock of the company was $100,000, as shown by the certificate filed, which stated that the whole amount thereof was issued in payment for property purchased by the corporation, specified in the certificate as "the steam engine, boilers, machinery and personal property on the premises 190 and 192 Classon avenue, in the city of Buffalo." It was purchased from one of the trustees, who testified that it was worth not to exceed $50,000. No witness estimated it at more than that sum, and most of the witnesses fixed the value much lower. The court charged, in substance, that the undisputed facts showed that the amount of capital had not been paid in; and directed a verdict for plaintiff, which was rendered accordingly.

*F. J. Fithian* for the appellant.

*Edward H. Hobbs* for the respondents. As the certificate filed did not state the value of the property for which the stock was issued, it was not in compliance with the law. (*Boynton* v. *Hatch*, 47 N. Y., 225.) A verdict was properly directed for plaintiffs. (*Wombough* v. *Cooper*, 2 Hun, 428; *Colligan* v. *Scott*, 58 N. Y., 670; *Leggett* v. *Hyde*, id., 275.)

MILLER, J. The second section of the act of 1853 (chap. 333), which amends the act authorizing the formation of corporations for manufacturing and other purposes (chap. 40, S. L. 1848), confers authority upon the trustees of any such company to purchase property "necessary for their business and to issue stock to the amount of the value thereof in payment therefor." The words "value thereof" evidently mean the fair valuation of the property, considering the purposes for which it is to be used, the nature of the business for which it

is purchased and for the prosecution of which the corporation is organized.    This rule authorizes an extended and wide latitude in the determination of the question of value..  While certain kinds of property which are employed for manufacturing purposes, such as machinery, fixtures, etc., have a specific and definite value which is readily ascertained and fixed, there are other descriptions of property where the value is dependent upon circumstances which render it quite uncertain and frequently very difficult to decide what the real fair and just value of the same actually is.    Mines and mining lands may properly be considered as embraced in the latter class, as their intrinsic value is fluctuating and uncertain and depends, to a very great degree, upon their successful development.    It, therefore, may well be that an honest overvaluation might be made, of property of this kind, or agreed upon, without a semblance of intentional fraud.    So, also, an error of judgment or a mistake in placing a valuation of property appropriated as capital by a manufacturing company, if made in good faith and not to evade the provisions of the act in question, would not, of itself, subject the owner of stock issued in payment of the property purchased to a personal liability.  (See *Schenck* v. *Andrews,* 57 N. Y., 133, where the rule as to the valuation of such property is fully discussed.) A discrepancy in the opinions of witnesses upon the question of value cannot be considered as sufficient to establish fraud so as to render a stockholder individually liable.    Nor can the value estimated and agreed upon by the parties, in all cases be regarded as the correct criterion by which to determine the actual and true value within the meaning of the statute, as such a rule might lead to the grossest abuse. As was held in the case cited, a discretion is vested in the trustees which calls for the honest exercise of their judgment. If they acted in good faith the stockholders could not be made liable.    The real question in cases of this character is whether the property was placed and taken at a high valuation with a fraudulent intent of evading the provisions of the statute.    While a disparity as to value might not establish

fraud of itself, cases may arise where the acknowledged difference between the price allowed or agreed upon and the actual value is so erroneous as to bear upon its face clear and unmistakable *indiciæ* that a fraud was intended to be perpetrated. It cannot be questioned that where property, the value of which is well known and understood, or capable of being easily ascertained, is taken at a most exorbitant estimate, far beyond any intrinsic and real value, it raises a strong presumption that the valuation is not in good faith and was made for a fraudulent purpose. This presumption will be conclusive unless it is rebutted by evidence which fully explains the apparent bad faith. In the case at bar the whole amount of capital for which the stock was issued was $100,000. It is proved by the trustee from whom it was purchased that it was worth not to exceed $50,000, and it is thus established beyond any controversy that it was taken for double its real value. The articles taken were not of a class where the value was not apparent or depended upon circumstances, but such as any one familiar with that species of property could readily ascertain and estimate. In fact the trustee from whom they were purchased knew all about them as he had been the owner of the property, and the valuation he placed upon them is a conceded fact. There could be no mistake or error of judgment in fixing a value upon this particular property by its owner, and under the circumstances it is manifest that there was a plain case of gross overvaluation with full knowledge of the facts. Such a transaction was fraudulent in law, on its face, and as the evidence stood there was no question of fact for the jury to pass upon. Had the case been submitted to the jury and they had rendered a verdict in favor of the defendant, it would have been the duty of the court to set it aside for want of evidence to sustain the finding. It follows that there was no error in the decision of the judge that the plaintiff had made out a case within the statute, and that the amount of the capital stock had not been paid in, as well as in his direction of the jury to render a verdict in favor of the plaintiffs.

The point made, that the holders of stock issued under the provisions of the act of 1853 are not and cannot be made personally liable for the debts of the corporation, whether such stock be full paid up stock or not, is without foundation. The act of 1848 (§ 10) declares that the stockholders shall be individually liable to the creditors of the company to the amount of the stock, until the whole shall be paid in. The act of 1853, which was an amendment of the act of 1848, allowed trustees to issue stock for property purchased as therein provided, to the amount of the value of the same. The capital could be paid in property instead of money, and this did not change the effect of the act of 1848, which is applicable to cases where money is paid as well as to those where property is taken and the value thereof allowed. For the same reason a certificate is required to be filed in the one case precisely as in the other. Both stand on the same footing and are controlled by the same rule.

There was no error upon the trial in the rejection of evidence, and no other question raised which demands comment.

The judgment should be affirmed with costs.

All concur; except CHURCH, Ch. J., not voting.

Judgment affirmed.