FRANCIS BROWN and FRANCIS GORDON BROWN, Appellants, v. JOSEPH W. SMITH, Respondent.

JOHN D. WING and another, Appellants, v. THE SAME, Respondent.

PETER A. WELCH and others, Appellants, v. THE SAME, Respondent.

*Manufacturers' act, chap. 40 of 1848, and chap. 333 of 1853 — certificate of payment of stock — must be sworn to — Issue of stock for property purchased — liability of holder to creditors.*

The certificate as to the payment of the capital stock of a manufacturing corporation, required to be filed by section 11 of chapter 40 of 1848, must be sworn to, and a mere acknowledgment is not a sufficient compliance with the provisions of the statute.

Where, in pursuance of section 10 of the said act, as amended by the act of 1853, stock has been issued to a person for the value of a manufactory and other property which has been purchased by the company, there being no fraud in the valuation of the property, he is not liable to the creditors of the company because of a failure on the part of the president and a majority of the trustees to file the certificate required by section 11 of the said act.

APPEALS from judgments in favor of the defendant, entered upon the report of a referee.

*Charles E. Tracy*, for the appellants.

*Freling H. Smith*, for the respondent.

Davis, P. J.:

The precise question upon which the learned referee disposed of this case in favor of the defendant was not presented or passed upon in any of the numerous authorities cited by the respective counsel. The actions were brought against the defendant, as a stockholder of a manufacturing corporation, organized under the general manufacturing act (chap. 40 of the Laws of 1848), as amended by chapter 333 of the Laws of 1853, to enforce a personal liability created by section 10 of the original act, on the ground that a certificate that the capital stock has been paid in, had not been made and recorded in the office of the county clerk, in accordance with the provisions of section 11 of the act.

A certificate was made by the president of the company and a majority of the trustees, certifying that the number of the shares of the capital stock of the company, was fixed at 1,400 of the par value of $100 each, and that the full number of such shares had been issued by the company, for which $30,000 had been paid in cash, and $110,000 in real estate and machinery. The execution of the certificate was duly acknowledged by the president, and the trustees who subscribed the same, and it was recorded in the office of the proper county, but it was not sworn to by any of the officers as required by the eleventh section of the act.

The referee held that the certificate was fatally defective, because it was not sworn to. In this, we think he was right, because the statute plainly requires a verification *by oath*, and a mere acknowledgment is not a proper substitute for that requirement. The officers of the corporation might feel free to acknowledge such a certificate, and yet wholly unwilling to verify it by oath.

The amendatory act of 1853 is in *pari materia*, with the act of 1848, and both are to be read together to ascertain the intention of the legislature. Section 10 is to be read as though section 2 of the act of 1853, had originally formed a part of it. For this purpose it should read as follows:

" Section 10. All the stockholders of every company incorporated under this act, shall be severally, individually liable to the creditors of the company in which they are stockholders, to an amount equal to the amount of stock held by them respectively, for all debts and contracts made by such company, until the whole

Hun—Vol. XIII.   52

amount of capital stock fixed and limited by such company shall have been paid in, and a certificate thereof shall have been made and recorded as prescribed in the following section : * * * But the trustees of such company may purchase mines, manufactories, and other property necessary for their business, and issue stock to the amount of the value thereof, in payment therefor; and the stock so issued shall be declared and taken to be full stock, and not liable to any further calls ; neither shall the holders thereof be liable for any further payments under the provisions of this section, but in all statements and reports of the company to be published, this stock shall not be stated or reported as being issued for cash paid into the company, but shall be reported in this respect according to the fact."

The defendant in this case is the holder of stock to the amount of $25,000 ; his shares were issued to and accepted by him, at the par value thereof, in part payment of a manufactory and other property necessary for the business of said company and purchased of him by the trustees for said company; his stock was issued and accepted as fully paid stock, and he never held or owned any other stock of said company. No question of fraud in the valuation of the property sold by him to the company is made, and it seems to be assumed, under the findings of the referee, to have been purchased at its fair value. The question presented, is whether such a stock-holder is liable to the creditors of a corporation, under the provisions of the tenth section as amended, because the president and trustee failed to file the certificate in the form prescribed by the eleventh section of the act of 1848. The tenth section, as above read in connection with the amendment, provides that the stock issued in payment for the purchase of property to the amount of the value of such property, "shall be declared and taken to be full stock and not liable to any further calls, nor shall the holders thereof be liable for any further payments under the provisions of the tenth section." It seems clear that the holders of such stock when the same is issued in conformity to the said section, and taken as full stock, are exempted from two things : First. From liability to any further calls.

Second. From liability for any further payments under the provisions of the tenth section of said act.

It is obvious that the calls mentioned refer to future payments, as

provided for in the act, to make the stock issued, " full " or fully paid stock ; payments of that kind are referred to in the last clause of section 10, which is in these words : "And the capital stock, so fixed and limited shall all be paid in, one-half thereof within one year and the other half thereof within two years from the incorporation of said company, or said corporation shall be dissolved." The words, " not liable for further calls," doubtless refer to this provision, and perhaps to assessments that might thereafter be made by the company for the purpose of making up deficiencies for losses of capital. But whatever was meant by this provision, it is clear that it has no relation to the personal liability to the creditors of the company.

It is impossible to find in the tenth section any thing to which the language, "neither shall the holders be liable for any further payments under the provisions of the tenth section," can apply unless it be the liability to pay to the creditors of the corporation an amount equal to the amount of the stock held by such stockholder. And unless that provision be held to exempt the holders of such stock, when issued fairly and without fraud for property purchased for which the stock is issued in payment, from that liability, it seems to be wholly without meaning.

The liability, as originally created in the tenth section, is limited by two things, both of which, to exempt the general stockholder must be fully complied with :

First. That the whole amount of the capital stock, fixed and limited by the company shall have been paid in.

Second. That a certificate of such payment, shall have been made and recorded as prescribed in the eleventh section.

If the legislature intended to exempt stock paid for property from liability to the creditors of the company, it, of course, intended to cover such liability, whether it arose from the fact that the capital stock had not been paid in, or having been paid in, that the prescribed certificate had not been duly made and recorded. That the legislature intended to put stock thus issued for property, upon a different footing from that of other stockholders, is, to some extent, indicated by the last provision of section 2, of the act of 1853, which says : " But in all statements and reports of the company to be published, this stock shall not be stated or reported as being issued

for cash paid into the company, but shall be reported in this respect according to the fact." It has been held in several cases, that where stock issued as full stock, has been issued for the purchase of property to an amount in excess of the value of the property, fraudulently or in bad faith, the protection of the amendatory act of 1853, against liability to the creditors of the corporation, does not extend to the holders of such stock; and it has been also held, that the question of fraudulent valuation is one of fact which may be litigated between the creditor and the stockholder. If a fraudulent valuation is given of the property purchased, then, very clearly, the stock has not been issued, "for the amount of the value thereof, in payment therefor as required by the statute;" and the holder of such stock is not entitled to the exemption created by the amendment of 1853. (*Boynton* v. *Andrews*, 63 N. Y., 93; *Boynton* v. *Hatch*, 47 id., 225; *Schenck* v. *Andrews*, 57 id., 133.)

*Boynton* v. *Andrews*, is a case where it appeared that the whole capital stock of a company, amounting to $100,000, was issued in payment of the property of the value of less than $50,000; and that a certificate was filed in conformity to sections 10 and 11 of the act of 1848. The facts were undisputed; and the court held as a matter of law, that the whole amount of capital had not been paid in, and directed a verdict for the plaintiff. In the course of the opinion, the court say: "The real question in cases of this character is, whether the property was placed and taken at a high valuation with a fraudulent intent of evading the provisions of the statute." It is obvious, that that case did not raise the question before us; it presented a question of fraudulent evasion of the statute, upon which the court properly held that no exemption could stand. And the court held, also, in substance, that the act of 1853, created no exemption from personal liability where the stock was not fully paid up, by reason of a fraudulent or evasive over valuation of the property purchased, and for which it was issued.

In *Schenck* v. *Andrews* (46 N. Y., 589), the question arose upon demurrer. The defendant's answer set up that the trustees of the corporation purchased a manufactory necessary for their business for $100,000, the value thereof (and the full amount of the capital), and issued the whole of said capital stock to the vendor

thereof for such manufactory and property, which stock so issued was declared by said company and was taken by said vendor as "full" stock. The answer was demurred to and the demurrer was sustained at the Special and General Terms of the Supreme Court, and judgment given for the plaintiff. The Court of Appeals reversed the judgment, holding that the answer set up a defense against liability to the creditors of the company. In the opinion of the court, Grover, J., says, "it is entirely clear that this section (speaking of section 2 of the act of 1853), designed to exonerate the holders of stock thereby authorized, from the liability to the creditors, imposed by section 10 of the act of 1848." And again, speaking of stock issued under the provisions of that section, he said, "when so paid, * * * the owner is not liable to the creditors of the company under section 10 of the latter act." * * * "Whether the property purchased was necessary to the business of the company, and whether the price paid therefor was no more than its fair value, are questions of fact, to be determined like other similar questions if controverted."

The question presented in that case differs from the present, only in the circumstance that the whole of the capital stock had been issued in payment for property, and that a certificate of that fact had been duly filed under the eleventh section. It cannot, therefore, be said to be conclusive of the questions of this case, because here the sworn certificate had not been filed. But, we think, the referee was right in holding that, "when the amendment of 1853 declared that the holders of stock of this character are not to be liable to any further payments under the tenth section, * * * they are excepted from the operation of the tenth section of the original act, and all liabilities thereby imposed."

We think no liability was imposed upon the defendant by the alleged creation of additional stock, for several reasons :

First. The stock was not regularly created.

Second. None of it was ever issued, either to the defendant or to any other person, and in respect of it there were, therefore, no *stockholders* to be liable.

Third. It was a transaction irregular as to the defendant, and inchoate as to the company. And the referee seems to us to have

been quite right in the view that the facts shown in relation to it were immaterial.

The judgment should be affirmed.

Brady and Ingalls, JJ., concurred.

Judgment affirmed.