# FERDINAND W. PECK

## v.

## THE COALFIELD COAL COMPANY, use, etc.

1. PAID CAPITAL STOCK—LIABILITY OF STOCKHOLDER—PAYMENT IN LANDS.—Where a subscriber to capital stock of a corporation has paid for the same, he is not liable under the statute for debts of the corporation, and it is immaterial whether such stock is paid for in money or by the transfer in good faith to the corporation of lands for the benefit of the latter.

2. DIRECTORS CAN NOT MAKE STOCKHOLDER LIABLE.—The stock being paid for and issued as paid stock, the directors of the corporation can not, by a subsequent resolution without the assent of the stockholder, change the character of the stock, and by declaring it unpaid, create a liability against the stockholder.

Peck v. Coalfield Coal Co.

3. CREDITOR OF THE CORPORATION.—Where the party seeking to enforce the liability of a stockholder was not a creditor of the corporation at the time the stock was paid for, he will be considered as having given credit to it in the condition it then was, and an examination of the books of the corporation would have shown him that the stock was fully paid.

APPEAL from the Circuit Court of Will county; the Hon. FRANCIS GOODSPEED, Judge, presiding. Opinion filed August 8, 1882.

Mr. S. W. PACKARD, for appellant; that payment of subscription to capital stock may be made by transfer or sale of lands to the corporation, cited Goodrich v. Reynolds, 31 Ill. 496; Phelan v. Hazzard, 6 Cent. Law Jour. 109; Pell's Case, L. R. 5 Ch. 11; *In re* Baglan Hall Colliery Co. L. R. 5 Ch. 346; Maynard's Case, L. R. 9 Ch. 60; Schroeder's Case, L. R. 11 Eq. 131; Cleland's Case, L. R. 14 Eq. 337; Sichell's Case, L. R. 3 Ch. 119; Jones' Case, L. R. 6 Ch. 48; Forbes' Case, L. R. 5 Ch. 270; Pritchard's Case, L. R. 8 Ch. 950; Ferros' Case, L. R. 8 Ch. 768; Savage v. Ball, 17 N. J. 142; Smith v. N. A. Co. 1 Nev. 423; Spense v. Iowa Valley Co. 36 Iowa, 407; Foreman v. Bigelow, 4 Cliff. 509.

A corporation, after its organization, is not liable for debts contracted prior thereto: Stowe v. Flagg, 72 Ill. 397; Western Screw M'f'g Co. v. Cousley, 72 Ill. 531; R. R. I. & St. L. R. R. Co. v. Sage, 65 Ill. 328.

If a plaintiff, after he has gone to trial on an issue he has made, does not disprove the answer of the garnishee, the latter must be discharged: Laschear v. White, 88 Ill. 43; Ill. Cent. R. R. Co. v. Cobb, 48 Ill. 404; The People v. Johnson, 14 Ill. 342; C. & St. L. R. R. Co. v. Killenburg, 82 Ill. 296; Kergin v. Dawson, 1 Gilm. 86; Rippen v. Schoen, 92 Ill. 229.

Even if the conveyance of land to the company was void under the statute of frauds, it would be valid as to all subsequent creditors: Carr v. Le Fevre, 27 Pa. St. 413; Ward v. Enders, 29 Ill. 519; Moritz v. Hoffman, 35 Ill. 553; Mixwell v. Lotz, 34 Ill. 382; Graham v. R. R. Co. 12 Otto, 161; Peterson v. Ill. L. & L. Ass'n, 6 Bradwell, 261.

Where the value of land at a given time is sought, evidence of its value at some other time is not competent: McCracken v. West, 17 Ohio, 16; Spencer v. Harford, 4 Wend. 381; Meehan v. Forrester, 52 N. Y. 280; Harner v. Zimmerman, 45 Ill. 22.

Mr. GEORGE S. HOUSE, for Coalfield Coal Company, appellee; that judgment can not be rendered against the garnishee unless the judgment creditor could recover in an independent suit against the garnishee, cited Richardson v. Lester, 83 Ill. 55.

But there are exceptions to this rule, in the case of fraud Lamb v. Stone, 11 Pick. 527; Brainerd v. Van Kuren, 22 Iowa 226; Hughes v. Corey, 20 Iowa, 399; Stevens v. Dillman, 86 Ill. 233.

The capital stock of a corporation is a trust fund for the payment of its debts: Ogilvie v. Ins. Co. 22 How. 387.

A corporation can not give away its stock and issue paid up certificates: Sawyer v. Hoag, 17 Wall. 610; Osgood v. King, 42 Iowa, 478; Burke v. Smith, 16 Wall. 390; New Albany v. Burke, 11 Wall. 96.

Mr. H. L. THAYER, *pro se;* that the judgment of a court of last resort is *res adjudicata* as to all questions in controversy and all such as might have been presented and determined, cited Clayes v. White, 83 Ill. 540; Reed v. West, 70 Ill. 479; Ogden v. Larrabee, 70 Ill. 510; Rising v. Carr, 70 Ill. 596; Kingsburg v. Buckner, 70 Ill. 514; Cook v. Norton, 61 Ill. 286; Rogers v. Higgins, 57 Ill. 247; Hollowbush v. McConnell, 12 Ill. 204; Semple v. Anderson, 4 Gilm. 561; Diversy v. Johnson, 93 Ill. 547; C. & St. L. R. R. Co. v. Holbrook, 92 Ill. 297; Hough v. Harvey, 84 Ill. 308.

As to the rule for construction of statutes: Wood v. Blanchard, 19 Ill. 39; Castner v. Walford, 83 Ill. 179; Dicker v. Hughes, 58 Ill. 41; City of Springfield v. Edwards, 84 Ill. 632.

The presumption of repeal by implication should never be indulged if the two acts can be reconciled: Harding v. R. R. I. & St. L. R. R. Co. 65 Ill. 90; Fowler v. Perkins, 77 Ill. 271; Card v. McCaleb, 60 Ill. 314; Tyson v. Postlewait, 13 Ill. 727.

Peck v. Coalfield Coal Co.

Stockholders can not, by an arrangement between themselves, take the stock at a nominal value, or declare it non-assessable, and thus relieve themselves from liability to creditors: Upton v. Tribilcock, 1 Otto, 45; Melvin v. Lamar Ins. Co. 80 Ill. 446; Union Ins. Co. v. Frear Stone Mfg. Co. 97 Ill. 537.

Where the garnishee is in possession of effects by a fraudulent transfer from the judgment creditor, he is liable although not answerable to a suit by the judgment creditor: Lamb v. Stone, 11 Pick. 527; Brainerd v. Van Kuren, 22 Iowa, 226; Hughes v. Corey, 20 Iowa, 399; Stevens v. Dillman, 86 Ill. 233.

LACEY, J. This is the same case reported in the 3d Bradwell, page 619, and in 98 Ill. 139–144.

For the facts and what has preceded in the action of the courts, reference may be had to the above opinions.

By the first opinion of the Supreme Court not reported, the judgment of this court as reported in 3d Bradwell, 619, was affirmed, but on rehearing the judgment was reversed. Upon a further rehearing the court remanded the cause to this court without specific directions, leaving it in such condition that this court might take action in accordance with the law as laid down, so that if this court should find the facts the same as found by the circuit court, then the judgment should be affirmed; but if this court should find the facts differently, the judgment should be reversed, and the facts as found should be recited in the final judgment.

The Supreme Court having decided that the action of garnishment as pursued, properly lies in this case, and that the question of whether the judgment of Thayer against the appellees was fraudulent could not be inquired into, there only remains the other question of fact as to whether appellant had paid up his subscription to the capital stock of the company. If the appellant had paid up his subscription to the capital stock, there could be no recovery under the statute providing for such recovery in case the stockholder be indebted to the company for his subscribed capital stock.

It is not claimed that the appellant paid his capital stock in money, but that he paid it by virtue of an agreement entered into by the company, by which he was to and did cause to be conveyed to appellees, with other stockholders, his and their interest in certain coal lands comprising about 1,000 acres, the title thereto being held by certain trustees in equity for him and the other stockholders, and for the benefit of the Chicago Railway Construction Company, the stock of the last named company belonging entirely to him and the other stockholders interested in the new corporation, and being entirely paid up.

The appellee, the Coal Company, was finally duly organized for business May 2, 1874, and on May 5th, 1874, by resolution of the board, this interest in the lands was taken in full satisfaction for his stock, which resolution is as follows:

WHEREAS, Messrs. Ira F. Benson, Geo. K. Clark, John H. Rice, R. M. Whipple, E. B. Sherman, Ben Field, J. O. Hudnutt, Sidney P. Walker, Alexander McDonald, F. W. Peck, Clarence I. Peck, B. F. Allen, J. O. Norton, E. H. Talbott, C. D. Wilbur, J. D. Bennett and S. M. Nickerson, have associated themselves into an organized company, called the Coalfield Coal Company, for the purpose of locating and building a town and mining coal on the line of the Chicago and Illinois River Railroad, in Grundy county, Illinois, and for such purpose have selected and purchased the following described lands, to wit: The E. half of Sec. 2, the N. W. quarter of Sec. 11, the N. E. quarter of Sec. 10, and the E. half of Sec. 3, all in township 32, R. 8, E. of the third P. M.; also, 20 acres off the S. E. quarter of Sec. 34, being the south 20 acres of the same, and the south 20 acres of the S. W. quarter of Sec. 35, in T. 33, R. 8, E. of the third P. M., the titles thereto being held by J. D. Bennett, Ira F. Benson, and certain contracts for title, by John H. Rice, as will appear by deeds and transfers on the files of the company, and to be duly recorded in the county aforesaid; that said titles being held by said Bennett, Benson and Rice, for themselves and several parties hereinafter named, in the proportion respectively, set opposite each name, as follows:

Peck v. Coalfield Coal Co.

| Names. | No. Shares. | Amount. |
|---|---|---|
| Ira F. Benson | 500 | $ 50,000 |
| C. D. Wilbur | 500 | 50,000 |
| J. D. Bennett | 500 | 50,000 |
| John H. Rice | 1024 | 102,400 |
| A. McDonald | 350 | 35,000 |
| Geo. K. Clark | 525 | 52,500 |
| E. B. Sherman | 26 | 2,600 |
| Ben. Field | 350 | 35,000 |
| R. M. Whipple | 525 | 52,500 |
| S. M. Nickerson | 175 | 17,500 |
| S. P. Walker | 175 | 17,500 |
| Ferd. W. Peck | 175 | 17,500 |
| Clarence I. Peck | 175 | 17,500 |

Aggregating a total valuation of............$500,000

And WHEREAS, The several persons interested in the above lands have subscribed to the capital stock of the Coalfield Coal Company an amount equal to their several respective interests, now therefore be it resolved:

First. That in consideration of the conveyance of said several tracts of land by said Benson, Bennett and Rice, to the Coalfield Coal Company, the said several subscriptions are, and shall hereby stand satisfied and paid in full, and that said stock certificates be issued in the name of the respective parties for their respective interests, and the necessary vouchers given, and entries made upon the books of the Coalfield Coal Company accordingly.

Second. That the stock so issued shall be delivered to the treasurer, and held by him in trust for the several parties in interest until the incumbrances upon the said lands shall be paid; the said several parties to whom the stock is issued having full right to represent and to vote the same.

The object of the incorporation was the purchasing, leasing and selling of coal and mineral lands, and mining, transporting and selling coal and other minerals, and the capital stock was $500,000 divided in shares of $100 each. The stock was issued and placed in the hands of the treasurer as provided for by the resolution.

The evidence, we think, clearly shows that the trustees who held the land described in the resolution, held it for the

Chicago Railway Construction Company, and by the latter's procurement and direction, was deeded by the trustees to appellee, and was received in good faith in full payment for appellant's and other stockholder's stock, and the treasure. accepted the deeds therefor.

That the value of the land was fully considered and discussed by the directors of the appellee, at the time the resolution was passed, and $500,000 was agreed upon as a fair and just value for the land, and this was the full amount of the stock. The land originally cost, when bought of the farmers, $57,000. The capital stock of the Chicago Railway Construction Company was $200,000 and was fully paid up in cash. Appellant owned of this stock $10,000, paid up, and by virtue of which was entitled to 175 shares of appellee's stock of $100 each, or $17,500, his stock remaining in the treasury of the company. This arrangement was by virtue of an agreement of all the parties in interest in both companies. Seven tenths of the assets of the appellee was regarded as the entire assets of the Construction Company. The stock of appellee was regarded as belonging to and remaining with the latter company, and with the Chicago and Illinois R. R. R. Co., the stockholders of the three being substantially the same, except three tenths of appellee's stock. On May 17, 1875, a resolution was passed canceling all the stock certificates issued, and directing the president, and he was authorized to issue stock to the amount of $245,000 to parties entitled to the same, and to deliver the stock so issued to the treasurer, to be held by him in trust, until the incumbrances on the lands had been paid. Again, July 6, 1875, a committee was appointed to ascertain and report who were the stockholders. The committee reported that appellant, among others, was a stockholder to the amount of 175 shares of $100 each, and on the same day, the directors adopted a resolution. that the president and secretary be authorized to issue to the stockholders certificates of stock. That he erase from the margin of the certificates of stock, the words " stock fully paid, and stock not subject to assessment," and insert the words " stock unpaid and subject to liabilities for obliga-

tions of the company," but the issuing of the certificate is not to release or discharge the stockholders or their assigns from any liability against the same.

The record shows that the appellant was not present at any of the meetings of the directors at which such action was taken, and gave no assent to the change in the conditions of the issuing of the stock. The contract between the appellant and the appellee, made May 5, 1874, by which the stock of the former was to be fully paid and satisfied, was attempted to be annulled and set aside by the directors without his consent. This the directors had no power to do, as it required the assent of both parties to make the contract for payment of the stock binding in the first place, so it required the assent of both parties to annul it, when made and consummated as this was, by performance on the part of appellant. Carr v. Lefevre, 27 Penn. St. 413.

We think the evidence entirely fails to show that the payment of the land for the stock was not in good faith, or that the price was not adequate. It matters not whether the trustees held the legal title for appellant or for the Chicago Railway Construction Company. It could make no difference to appellee whether the appellant and other stockholders paid for the stock by land, in which they had a direct interest, or procured to be conveyed to them by the trustees, by the consent of the Construction Company, who held the beneficial interest in it.

In either case appellee would procure the title to the land, at the instance of appellant and other stockholders, and that was all that concerned it. As a matter of fact the evidence shows that the Chicago Railway Construction Company held the beneficial interest in the land, but the company was controlled by appellant and other stockholders in it, whose stock was fully paid up.

As the appellee got the benefit of the land by and through the action of the appellants and others, it does not matter that the resolution was not strictly accurate in stating that the appellant and the other stockholders had a direct beneficial interest in the land, or that the trustees named in the resolu-

tion held it for them in certain proportions named therein. Nor does it matter that three tenths of the interests in said land was held by parties stockholders in the appellee, who had no interest in the Construction Company.

At the time the payment for the stock was received, Thayer, the creditor of the appellee, and who is using its name to enforce the collection of his judgment against it in this garnishee proceeding against appellant, a stockholder, had no claim against it and was not a creditor.

Before he gave it credit he had a right to investigate its affairs and could have seen by an examination of the books that appellant had fully paid for his stock and owed nothing for or on account of his subscription.

That the stock was paid for on the very day of the appellee's organization. Goodrich v. Reynolds, 31 Ill. 496; Phelan v. Hazzard (opinion by Dillon and Treat), 6 Central Law Journal, 1878, page 109, a very elaborate and well considered opinion.

To show that contracts for the payment of stock like the case of appellant have been upheld by the courts in numerous cases, Judge Dillon cites the following, which seem to be in point. Pell's Case, Law Reports, 5 Ch. 11; *In re* Balgan Hall Colliery Co. L. R. 5 Ch. 346; Maynard's Case, Ibid, 9 Ch. 60; Schroeder's Case, Ib. 11, Eq. 131; Cleland's Case, Ibid, 14 Eq. 337; Sichell's Case, Ib. Ch. 119; Jones' Case, Ib. 6 Ch. 48; Forbes' Case and Judd's Case, 5 Ch. 270; Pritchard's Case, Ibid, 8 Ch. 950; Ferros' Case, Ibid. 9 Ch. 355; Bush's Case, Ib. 554; Dent's Case, Ib. 8 Ch. 768; Savage v. Ball, 17 N. J. 142; Smith v. N. A. etc. Co. 1 Nevada, 423; Goodrich v. Spencer, 31 Ill. 490; Spense v. Iowa Valley Co. 36 Iowa, 407, 471.

On the question of fraud in case of assignee in bankruptcy where the stock had been paid by transfer of land, and where it was decided fraudulent, see 7 Central Law Journal, p. 430; 4 Cliff. R. 509; Thompson on Liability of Stockholders, p. 155, Sec. 134.

It is claimed by appellees that the Construction Company had advanced some $9,000 on the purchase price of the land

Peck v. Coalfield Coal Co.

conveyed to appellee, and had charged appellee with the amount, and finally recovered a judgment for it; hence it should be inferred, it is argued, that the appellee was in reality the purchaser of the land from the original owners, and the Construction Company, in first buying the land, was acting as its agent, and that the consideration for payment of appellant's and other stock had failed.

We see nothing inconsistent in this, if it was the intention of the parties that the first cost of the land should be paid by appellee, and the difference between the first cost of the land and the value of it as estimated, $500,000, was to be taken in full payment of the stock, then the charge was a proper one; that is, if the appellee was to pay the first cost of the land in addition to the amount of the stock of appellant and others, the charge would be proper, but if the Construction Company was only to receive the $500,000 in the stock of appellee for its interest in the land, and was to receive nothing for money advanced, then the claim for this $9,000, thus advanced, was an improper one, and appellee could have defended against it. If appellee chose to submit to any improper demand, it could not on that account invalidate the appellant's payment of his stock, if it was good in the first place, unless he were consenting to a different arrangement. And it appears from the evidence that the directors, after the appellant had removed and retired from the management of the appellee's affairs, were acting in a somewhat antagonistic manner to his interest.

They seem desirous to make him liable to creditors becoming such after his payment of his subscription, and for this reason their action should be regarded with little favor, as touching his interest where his consent was not obtained.

If his satisfaction of his subscription was good when made, the directors could not, without his consent directly or indirectly invalidate it, nor should inferences from their subsequent conduct be drawn against him.

Appellee cites the following authorities to show that inadequacy of consideration for property taken in payment of stock subscription, if known to both parties, is fraudulent and inval-

idates the payment, viz.: Moss v. King, 42 Iowa, 478; Sawyer v. Hoag, 17 Wall. 670; Burk v. Smith, 16 Wall. 390; New Albany v. Burk, 11 Wend. 96; Stevens v. Dillman et al. 86 Ill. 233.

But we find nothing in the evidence in this case to show that the defendant understood or believed that the land deeded to appellee was not worth the amount at which it was estimated.

The prospects of a city being built on the land, and of an immense coal trade, seemed to induce in their minds the belief that the property was very valuable, and no contradictory evidence is shown that they were not justified in their expectations.

For these reasons the judgment of the court below is therefore reversed, and because there can be no recovery on the evidence in the case the cause is not remanded.

Judgment reversed.