# Cases

# FIRST DEPARTMENT,

AT

## GENERAL TERM,

### May, 1886.

---

## FREDERICK C. KNOWLES, Respondent, v. WALTER B. DUFFY, Appellant.

*Right of a corporation to exchange all of its stock for property transferred to it — what must be shown to establish the liability of a stockholder, in such case, to a creditor of the company — the corporation may purchase property owned by one of the board of trustees.*

On December 24, 1883, the Morgan Sugar Skimmer Company was organized. On the same day the defendant, who was elected its president, purchased, on behalf of the corporation, of S. J. Lawrence, one of the trustees, certain patents covering an invention described as the Morgan Automatic Sugar Skimmer, and issued and delivered to him in payment therefor a certificate for the entire capital stock of the company, 4,000 shares. Immediately after the purchase the said trustee surrendered this certificate, and by his directions 2,920 shares of the stock so surrendered were issued and apportioned among his co-trustees, no one of whom subscribed or paid any money therefor, only eighty shares of the residue of the stock being taken by Lawrence and a brother, who had an interest in the patents.

The referee found that these patents were valuable, and were necessary for the business of the corporation, but that they were purchased by the defendant and his associate trustees without making any estimate of their value, and that they were not worth $400,000.

In an action brought by a judgment creditor of the company against the defendant, as a stockholder, to enforce payment of the judgment against him on the ground that the capital stock had not been fully paid in:

*Held,* that the foregoing facts did not show that the purchase was made in bad faith and with an intent to evade the statute, as was necessary in order to charge the defendant with liability for the debts of the company under the provisions of the act of 1848, as amended by chapter 333 of 1853.

That the purchase of the property by the trustees from one of their number for the alleged benefit of the corporation, and the payment therefor of the company's entire capital stock, was not a fraud upon the stockholders and creditors of the company.

APPEAL from a judgment in favor of the plaintiff, entered on the report of a referee.

*Smith & Hulett,* for the appellant.

*Valentine Marsh,* for the respondent.

BRADY, P. J. :

This action was brought to enforce a supposed liability of the defendant as a stockholder in a corporation called the Morgan Sugar Skimmer Company, organized under the general manufacturing act of 1848 and the acts amendatory thereof, and on the ground that the capital stock had not all been paid in and a certificate filed, as required by sections 10 and 11 of that act ; the plaintiff being a creditor of the company who had recovered judgment against it, and had issued execution thereon, which was returned unsatisfied in whole. The defendant admitted the organization of the company, denied that he was one of the incorporators, and alleged that his stock was issued in payment for property purchased, and was fully paid stock and not liable to further calls. The record presents the pleadings, the findings of fact of the referee, his conclusions of law and the exception taken to his report.

It appears that on the day of the organization of the company, namely, the 24th of December, 1883, the defendant was elected its president, and that on the same day it purchased of Stephen J. Lawrence, one of the trustees, certain patents covering an invention described as the Morgan Automatic Sugar Skimmer, and issued and delivered to Lawrence in payment therefor a certificate for 4,000 shares of the company's stock, which was its entire capital stock. It also appears that these patents were valuable, and were necessary for the business of the corporation ; but the referee finds that the defendant and his associate trustees purchased them without making any estimate of their value, and that they were not worth $400,000. It also appears that Lawrence, immediately after the purchase, surrendered this certificate, and by his directions 2,920 shares of the

stock so surrendered were reissued and apportioned among his co-trustees, no one of whom subscribed or paid any money for the stock so received, and that of the residue only eighty shares were taken by Lawrence and his brother, who had an interest in the patents.

It is contended, on behalf of the appellant, that under the Laws of 1848, to which reference has already been made, as amended by chapter 333 of the Laws of 1853, the omission to file a certificate does not create any liability on the part of a stockholder holding stock issued for property, where there is no fraud in the valuation ; in other words, that to charge the holder of stock so issued, individually, for the debts of the company, it is not enough to prove that the property was purchased and paid for at an over-valuation, but it must be shown that the purchase at the price agreed upon *was in bad faith and to evade the statute.* And he insists that two facts must be established in order to establish the responsibility of the stockholder, namely : First, that the stock issued exceeded in amount the value of the property in exchange for which it was issued ; and, second, that the trustees deliberately, and with a knowledge of the real value of the property, over-valued it and paid in stock for it an amount which they knew was in excess of its actual value.

In *Boynton et al.* v. *Andrews* (63 N. Y., 93) it was held that in actions to enforce the liability provided by the sections of the law of 1848, to which reference has already been made, as amended by the act of 1853, already alluded to, the question is whether the purchase was made in good faith or at a high valuation with a fraudulent intent to evade the provisions of the statute. And further, that an honest over-valuation would not of itself subject the owner of the stock to personal liability. It is true the court said that where it appeared that property, the value of which was well known or understood or capable of being ascertained, was purchased at a price that was beyond its real value, a strong presumption of fraud was raised, and unless rebutted by evidence fully explaining the apparent bad faith, the transaction was fraudulent in law and no question of fact was presented for the jury. And in *Douglass* v. *Ireland* (73 N. Y., 100) it was held that it was not enough, in cases of this kind, to charge the holder of stock to prove that the prop-

erty was purchased at an over-valuation, through a mere mistake or error in judgment on the part of the trustees, but that it must be shown that the purchase was in bad faith and to evade the statute. It is true it was also held in that case, as contended for by the appellant, that it was necessary, in order to establish a legal fraud which would take the stock issued out of the protection of the act of 1853, to prove that the stock exceeded in amount the value of the property in exchange for which it was issued, and that the trustees so issued it deliberately and with knowledge of the real value of the property.

The same doctrine seems to have been declared in the case of *Drexel* v. *The Lake Superior Iron Company* (90 N. Y., 87), in which it was held that the question was properly submitted to the jury as to whether the purchase and issue of the stock for the property was in good faith or simply a scheme to evade the statute. (See, also, *Brown* v. *Smith*, 13 Hun, 408.) The finding of the referee, that these patents were purchased without making any estimate of their value and that they were not worth the sum of $400,000, is not sufficient to meet the exigencies of the legal rule established by the adjudications cited.

The referee found that the patents were valuable and were necessary for the business of the corporation. There is no finding of any fact of which fraud can be predicted or of any attempt to evade the operation of the statute — nothing, indeed, to show that it was not made in good faith. The position contended for on behalf of the respondent, namely, that it was a fraud upon the stockholders and creditors of the company for its trustees to purchase of one of their number property for the alleged benefit of the corporation, and pay therefor the company's entire capital stock, cannot be sustained.

In all the cases cited in the Court of Appeals it appears that the purchase was made from one or more trustees, for which the capital stock was given in whole or in part, and although the question as to the validity of the purchase from the trustee does not appear to have been expressly presented, it is not to be supposed that if the point were valuable it would not have been presented in these cases. The statute contemplates the purchase of mines and manufactures or other property necessary for the business. This would seem

to indicate that the purchase might be made of any person, provided, as also contemplated by the rule of law referred to, that the purchase was *bona fide,* for a proper consideration and without any attempt to evade the statute. At all events, these cases presenting this feature, to which no exception was taken, this court would not feel disposed in the first instance to declare that such a purchase might not be made.

For these reasons it is thought the judgment should be reversed, and a new trial ordered, with costs to abide the event.

Daniels, J., concurred.

Judgment reversed, with new trial ordered, with costs to abide event.