## THE MALLINCKRODT CHEMICAL WORKS

### v.

## THE BELLEVILLE GLASS COMPANY ET AL.

*Insolvency—Preference—Unpaid Stock Subscriptions—Insolvent Stockholders—Responsibility of Solvent Stockholders—Payment for Stock by Sale of Property to Corporation.*

Mallinckrodt Chem. Works v  Belleville Glass Co.   .

1.   Upon a bill filed to set aside an attempted sale of its property by an insolvent corporation, and to compel the stockholders to pay, *pro rata*, upon their unpaid stock, the complainant's claim against the corporation, this court holds that the bill charged facts constituting fraud in law in the said sale by the corporation, and that the demurrer of the vendees under such sale, who were made defendants, was improperly sustained.

2.   The fact that a part of the stockholders, whose stock was not fully paid, were insolvent, did not render the solvent stockholders liable, in such case, for the debts of the corporation beyond the amount of their own unpaid stock.

3.   Although in a sale of property to a corporation, in consideration of the issue to the vendor of paid up stock, the property may be priced at an amount in excess of its actual value, yet, unless there was fraud in the transaction, it is binding, both upon the company and its creditors.

[Opinion filed February 4, 1890.]

IN ERROR to the Circuit Court of St. Clair County; the Hon. BENJ. H. CANBY, Judge, presiding.

The amended bill in this case alleges the organization of the Belleville Glass Company under the laws of Illinois; that the capital stock of said company is $25,000, divided into 250 shares of $100 each; that at February term, 1886, of St. Clair County Circuit Court, one John Kloes recovered a judgment against the Glass company and one John Lorenzen for $1,157 and costs of suit, upon which execution was issued to the sheriff of St. Clair county, and that after demand thereon the Glass company allowed the same to remain unpaid for the space of more than ten days; and that said Glass company had ceased doing business and had become insolvent.   The bill further sets forth that the Glass company is indebted to the complainant, the Mallinckrodt Chemical Works, in the sum of $3,090.68 and interest thereon, which is due, and for payment of which complainant had made repeated demands which were refused. It is further averred that on or about May 12, 1886, the Glass company, being hopelessly insolvent, assigned all its property to the Belleville Savings Bank, Madison T. Stookey, John Kloes and Margaretha Lorenzen, by a pretended bill of sale, including therein an assignment of all its accounts and choses in action of every kind; that said pretended bill of sale was

406    APPELLATE COURTS OF ILLINOIS.

VOL. 34.]    Mallinckrodt Chem. Works v. Belleville Glass Co.

not an actual sale of its property and effects, but there was an agreement entered into at the time said bill of sale was executed between the Glass company and the Belleville Bank, Stookey, Kloes and Lorenzen, that said last named parties should collect the outstanding accounts and sell the said personal property, and out of the proceeds of such collections and sale, after deducting expenses, pay their claims against the Glass company, and the surplus, if any, turn over to the Glass company.

It is also alleged, that at the time of this alleged sale the bank, Stookey, Kloes and Lorenzen knew that the Glass company was insolvent and unable to pay its debts in full, and that said transfer was made for the purpose of giving these creditors an unlawful preference ; that said transfer was in fact an assignment of all the property of the Glass company to said bank, Kloes, Stookey and Lorenzen, so as to give them a preference, in violation of the statute in reference to assignments for the benefit of creditors, and was made by the Glass company for the purpose of hindering and delaying complainant in the collection of its demand against said Glass company, and that the said bank, Kloes, Stookey and Lorenzen, participated in such purpose. The bill also sets forth that John N. Eberle, Joseph Wolfort, Christian Langhorst, George N. Truesdale, Hiram H. Steible and John Lorenzen are the stockholders, holding all the shares of stock of said Glass company, and by a subsequent amendment of bill shows the shares held by each; that the total capital stock of said Glass company has not been paid up in full, and that there now remains unpaid on the capital stock about the sum of $10,000, a part of which is owing by each of said stockholders. The subsequent amendment of bill alleges that Eberle subscribed for sixty-one shares of stock, which were never issued and nothing ever paid on them, and that fifty-four shares were issued to Eberle in consideration of the assignment by him to the company of a contract for the conveyance of certain lands and for certain money subscriptions, and that such consideration was not worth more than $2,100, and stock to the amount of $5,400 was issued to him therefor, and that Wolfort holds

five shares of this stock, and Truesdale ten shares, and that this stock as to creditors remains unpaid in the proportion of twenty-one to fifty-four.

The bill prayed for a receiver to take charge of the property of the Glass company, including that transferred to the bank, Kloes, Stookey, and Lorenzen, and sell same for the satisfaction of the debts of the Glass company, and if the sum so realized be insufficient to pay such debts, that then an account may be taken of the amounts due from said stockholders on their stock, and that such stockholders be required to contribute *pro rata* a sum sufficient to pay balance of the debts of the Glass company, and if any of said stockholders shall be insolvent, then the sum necessary to pay the balance of the debts of the company be divided *pro rata* among the solvent stockholders.

The Belleville Savings Bank and Stookey demurred to the amended bill and the demurrer was sustained, and complainant electing to stand by its bill, it was dismissed as to the bank and Stookey. John Wolfort, Christian Langhorst, George N. Truesdale and Hiram H. Steible filed answers to the amended bill, and the other defendants were defaulted. A receiver was appointed for the Glass company, and he reported December 3, 1888, that no assets of the Glass company had come into his hands, and that they had no assets, except amounts remaining due from stockholders. At September term, 1887, of the Circuit Court, the cause was heard and a decree was entered finding the existence and insolvency of the Glass company; that it is indebted to the complainant in the sum alleged in bill; finds about $10,000 of capital stock unpaid, and that the persons named in bill hold all the stock, and refers the cause to the master, to take an account of the debts and liabilities of the Glass company and of all its stockholders, and the amount of stock held by each, and how far paid up, and of the solvency or insolvency of said stockholders, and that the master report his findings to the court. Subsequently, by agreement, reference to the master was set aside and by consent the court heard the evidence and stated the accounts.

408     APPELLATE COURTS OF ILLINOIS.

VOL. 34.]    Mallinckrodt Chem. Works v. Belleville Glass Co.

The court found that the stock of said Glass company is held as follows: John Lorenzen, thirty shares; John N. Eberle, seventeen shares; Christian Langhorst, seven shares; Hiram H. Steible, forty shares; Joseph Wolfort, forty-five shares; George N. Truesdale, fifty shares.

That in addition John N. Eberle subscribed for sixty-one shares, which have never been issued, and on which there remains due $6,100, and that on five shares of stock held by Wolfort there remains due and unpaid the sum of $305.55, and that on ten shares held by Truesdale there remains due and unpaid the sum of $611.10, and that Eberle, Wolfort and Truesdale are liable to the creditors of the Glass company for the debts of said company, in proportion to the amounts so remaining due and unpaid on their stock, and in case of the insolvency of one or more of said stockholders, the remaining solvent stockholder or stockholders is or are liable for the shares of such insolvent stock to the extent of the amount remaining unpaid on his or their stock, but no further.

The court finds Eberle insolvent, and decrees that Wolfort and Truesdale respectively pay the full amount found due on the shares of stock held by them to the receiver for the creditors concerned in this litigation. From this decree Wolfort and Truesdale prayed and were allowed each an appeal, which Wolfort perfected by filing bond, and the complainant prosecutes this writ of error, Wolfort and Truesdale filing cross-error, in so far as the decree affects them.

Messrs. W. G. KUEFFNER and DILL & SCHAEFER, for plaintiff in error.

1. The court erred in sustaining the demurrer of the Belleville Savings Bank and Madison T. Stookey to the amended bill.

"This point involves a construction of the thirteenth section of our assignment act, which provides that "every provision in an assignment hereafter made in this State providing for the payment of one debt or liability in preference to another, shall be void, and all debts and liabilities within the provisions of the assignment shall be paid, *pro rata*, from the assets thereof." Sec. 13, Chapter 10*a*, Hurd's R. S.

An insolvent debtor can not defeat the provisions of the act and give preferences by the contrivance of simply turning over all his property to some favored creditors without executing an assignment in the form prescribed by the statute. White v. Cotzhausen, 129 U. S. 329; Farwell v. Cohen, 21 Chi. Leg. N. 359.

Similar decisions were made in the following cases: Martin v. Hausmann, 14 Fed. Rep. 160; Kellogg v. Richardson, 19 Fed. Rep. 70; Krebs v. Ewing, 22 Fed. Rep. 693; Freund v. Yaegermann, 26 Fed. Rep. 812; Perry v. Corby, 21 Fed. 737; Clapp v. Dittmann, 21 Fed. Rep. 15; Clapp v. Nordmeyer, 25 Fed. Rep. 71.

2.   The Circuit Court erred in refusing to hold the solvent stockholders of the Belleville Glass Company responsible for the unpaid stock subscription remaining due from the insolvent stockholders.

We insist that the amount due from the insolvent stockholders should be charged against the solvent stockholders and that they should be required to pay it.

We contend that the 25th section of the corporation act in effect makes the stockholders liable as partners to the creditors of the corporation to extent of the unpaid portion of the capital stock; or to speak more accurately, that each stockholder is a guarantor of the debts of the corporation to this extent.   Thompson v. Meisser, 108 Ill. 362; Schalucky v. Field, 124 Ill. 617.

If this construction shall prevail, then every person dealing with a corporation will have the assurance of a security to the extent of the amount of the capital stock, upon which he can rely for the payment of his claim.

This certainly was the legislative policy, because the 16th section of this act makes the officers and directors individually liable for debts contracted by them in excess of the capital stock.

A statutory liability is to be enforced according to the intent of the statute creating it.   We refer to Taylor on Corporations, Secs. 712, 713, 714, etc., where the subject is fully discussed.   Baker v. Backus, 32 Ill. 79; Culver v. National Bank, 64 Ill. 528; Diversey v. Smith, 103 Ill. 378.

410    APPELLATE COURTS OF ILLINOIS.

VOL. 34.]    Mallinckrodt Chem. Works v. Belleville Glass Co.

Messrs. TURNER & HOLDER, for Belleville Savings Bank and M. T. Stookey.

The only supposed error in which the bank and Mr. Stookey are interested is the first one made by appellants, viz.: "The court erred in sustaining the demurrer of the bank and Stookey to the amended bill."

A debtor has a right to sell property incumbered by a mortgage or judgment to a creditor, and may prefer creditors. This is the well settled law of this State by a long line of decisions. Cross v. Bryant, 2 Scam. 43; Howell v. Edgar, 3 Scam. 417; Powers v. Green, 14 Ill. 387; Wilson v. Pearson, 20 Ill. 87; Finlay v. Dickerson, 29 Ill. 9; Morris v. Tillson, 81 Ill. 607; Tomlinson v. Mathews, 98 Ill. 178; Field et al. v. Geohegan et al., 125 Ill. 68.

The court can not construe the assignment act in this case, because no assignment under the act was ever made. Before that act can be put in action the debtor himself must voluntarily bring himself within its provisions and put it in motion by making an assignment in writing, acknowledging and recording it. Until that is done the act does not interfere with the action of the debtor. Farwell v. Cohen, 21 C. L. N. 359; Preston v. Spaulding, 120 Ill. 209. Prior to our assignment act, a debtor could prefer creditors in his deed of assignment. Bishop on Assignment, 164; Gardner v. Com. National Bank, 95 Ill. 298. The bank and Stookey had a right to buy the property subject to the lien already upon it, and this is all they did. The law favors the diligent. If the sale was made to hinder and delay other creditors, there was an adequate remedy at law in attachment.

Messrs. KOERNER & HORNER, for Truesdale and Wolfert.

REEVES, P. J. Independent of the question whether the preference gained by the Belleville Savings Bank, Stookey, Kloes and Lorenzen, can be upheld in equity, there is an allegation in the bill which, we are led to believe, was overlooked by the Circuit Court in passing upon the demurrer to the bill filed by the bank and Stookey.

It is this: The complainant further represents that said alleged sale of said personal property by said sale bill was not, in fact, a sale of said property for the price stated in said sale bill nor for any other fixed or definite price, nor was it a sale at all or for any price; but there was then and there an understanding and agreement between said Belleville Glass Company and said Belleville Savings Bank, Madison T. Stookey, John Kloes and Margaretha Lorenzen, that said transaction should not be a sale in fact at all, but that said Belleville Savings Bank and said Madison T. Stookey, John Kloes and Margaretha Lorenzen, should collect said outstanding accounts, and sell said personal property so turned over and alleged to be sold to them, either for cash or 'on credit, as to them might seem most advantageous, and out of the proceeds, after deducting the expenses, pay first their own claims against said Belleville Glass Company, and if there should then be any surplus remaining, to return the same to the Belleville Glass Company, or to hold the same subject to the order of the Glass company. The demurrer admitted this allegation to be true, and taking it as true, no citation of authority is needed to show that, by reason of the last clause in the allegation, the transaction was fraudulent in law as to the other creditors of the Glass company, and could not, as against such creditors, stand. Selz v. Evans, 6 Ill. App. 466, and cases there cited.

The demurrer of the bank and Stookey should have been overruled. Whether this transfer, had it been absolute, would have been invalid as giving a preference, we do not deem it necessary now to determine.

The second error assigned by plaintiff in error is that the Circuit Court refused to hold the solvent stockholders responsible for the unpaid stock subscriptions remaining due from insolvent stockholders. The 25th section of the act relating to corporations is relied on to support the proposition involved in this assignment of error. As we construe this section, it only renders stockholders delinquent in payment for stock liable to the full amount unpaid on their stock, when this becomes necessary because of the insolvency of other stockholders who are also delinquent in payment for their stock. It must be

412     APPELLATE COURTS OF ILLINOIS.

VOL. 34.]    Mallinckrodt Chem. Works v. Belleville Glass Co.

conceded that a stockholder in a corporation organized under the act of 1872, who has paid in full for his stock, is not liable to a creditor of the corporation. Why should there be any greater liability on a stockholder who has not paid in full for his stock, than the amount due and unpaid on his stock?

Is it to be said that the Legislature intended to impose the heavy penalty upon a stockholder who has not paid in full for his stock, of making him liable for the full amount unpaid upon the shares of all other insolvent stockholders who may be in arrears? We think not. While the language used in the 25th section may be so construed, we' do not think it a reasonable construction. If the Legislature intended to create such a penalty as is above indicated, we think it should have used language that plainly expressed such a purpose. Penalties of this character should not be created by construction but only by clear and explicit enactment. As the Circuit Court held upon this point as fully for complainant as in our judgment was warranted, this assignment of error is not sustained. There remain the cross-errors assigned by Wolfort and Truesdale. It is not disputed that Wolfort and Truesdale paid the par value for the stock held by them, but it is claimed that Eberle, to whom five shares of Wolfort's stock and ten shares of Truesdale's stock were originally issued, did not pay for it in cash, and that the contracts which he turned over to the company on account of which the stock was issued were not worth the par value of the stock, and consequently the stock was never fully paid for to the company, and in such case the assignee of the stock is liable to creditors of the company for the amount unpaid.

The stock was issued by the company to Eberle as paid up stock under a resolution of the board of directors passed April 22, 1882, which (reciting the proposition of Eberle to assign to the company for $5,000 his contract with Harding, Kloes and others, by which they agreed to convey to him or his assigns five acres of coal land in West Belleville, free from all incumbrances, and to pay him or his assigns $2,000 in consideration of his building the glass works on said lands and to accept stock of the company at par in payment) accepted the

Mallinckrodt Chem. Works v. Belleville Glass Co.

offer of Eberle and directed the president and secretary to complete the purchase and issue the stock.

Subsequently, at a meeting of the directors held July 22, 1882, it was ordered that fifty-four shares instead of fifty be issued to Eberle, as paid up stock, in consideration of the assignment of the contract above referred to. The books of the company showed the stock paid up. It does not appear that either Wolfort or Truesdale knew of the transaction by which this stock was issued, when they bought. Wolfort bought his five shares of McAdam, who had received the shares from Eberle, by transfer on the books of the company. Truesdale bought of Foster, in whose name the ten shares stood when Truesdale purchased them.

Even if we concede that the consideration which the glass company received from Eberle for the fifty-four shares of stock was not equal in value to the par value of the stock, yet unless the transaction is impeached for fraud, it is binding both upon the company and its creditors. To charge a holder of stock with individual liability it is not enough to prove that the stock was paid for in property, and that an over-valuation was placed by the parties upon the property through a mistake or error of judgment, but it must be shown that the purchase of the property at the price agreed upon was in bad faith and fraudulent. Peck v. Coalfield Coal Co., 11 Ill. App. 88, and cases there cited.

The amended bill does not charge that this stock was issued to Eberle in bad faith, but only avers that the consideration for which the stock was issued did not exceed in value $2,100. Except in the matter of the increase of the amount of stock issued to Eberle in consideration of the assignment of the contract referred to, from fifty to fifty-four shares, we find nothing in the proof that tends to impeach the good faith of the transaction.

The decree as to Wolfort and Truesdale is, upon the cross-error assigned by them, reversed and remanded.

*Decree reversed and remanded.*