THE STREATOR RECLINING CAR SEAT COMPANY

V.

ROBERT RANKIN ET AL.

*Corporations—Formation of—Issue of Paid-up Shares—Exchange of for Property—Overvaluation of Property—Liability of Shareholders to Creditors—Insolvency.*

Where, on the organization of a corporation, property is received by it in exchange for paid-up shares, which property is overvalued in the exchange, upon the corporation becoming insolvent the shareholders are not liable to the creditors of the corporation upon their stock, unless the overvaluation was fraudulent and made with the intent of evading the statute.

[Opinion filed December 12, 1892.]

APPEAL from the Circuit Court of La Salle County; the Hon. CHARLES BLANCHARD, Judge, presiding.

Messrs. H. N. RYON & SON, for appellant.

Messrs. REEVES & BOYS, for appellees.

MR. JUSTICE HARKER. In the year 1887, the Streator Reclining Car Seat Company was incorporated under the laws of Illinois, with a capital stock of $250,000, divided into 2,500 shares of $100 each. One E. H. Gillfillan, the chief promoter of the enterprise, subscribed for 2,495 shares, and W. H. Lukins, J. G. Wilson, H. J. Wood, C. D. Chalfant and Geo. W. Powers, citizens of Streator, each for one share. The company was formed to succeed another company with which Gillfillan had been connected, known as the St. Louis Reclining Car Seat Company. The St. Louis Company owned a patent for a reversible car seat, tools, machinery and apparatus necessary for carrying on the business of manufacturing reclining car seats, and proposed to transfer this property, together with certain contracts with railroad companies for the sale of seats, in payment for the capital stock of the new corporation. In order to interest citizens of Streator in the enterprise and raise money for immediate use, it was proposed to allow such citizens to have 650 shares at $10 per share. Accordingly the stock was issued as paid-up, the patent (rated at $240,000), the machinery, contracts, etc. (rated at $10,000), transferred, and various subscribers in Streator, became the holders of stock at $10 per share. The enterprise did not prove a financial success. After operating about two years it suspended business. In October, 1889, Charles Green recovered judgment in the La Salle County Circuit Court for $2,902.66 against the corporation. An execution was issued and returned *nulla bona.* In April, 1890, Green filed the requisite affidavit for garnishee process, and appellees were duly summoned as garnishees. They all denied being indebted to the Streator Reclining Car Seat Company, but admitted that at the time of the service of the garnishee summons, they owned stock as follows: Robert Rankin, twenty-five shares; John Essington, 200 shares; M. J. Luther, 100 shares; Fred W. Lukins, ten shares; John A. Hayes, 225 shares. William H. Lukins answered that he was an original

subscriber for one share, for which he did not pay, but which he surrendered back to the company. He also held forty-nine shares, which he did not receive as an original subscriber. The stock held by the garnishees at the time of service upon them, had been obtained through the proposition of the St. Louis company to dispose of 650 shares to Streator parties at $10 per share. The shares had been delivered to them as paid-up stock, although each one doubtless understood the mode by which such payment had been accomplished. Judgment was sought against the garnishees, because they were the owners of stock which had not been fully paid for. On a trial, had by the Circuit Court without a jury, there was a finding for appellees, and judgment against appellant for costs.

The writer of this opinion seriously doubts the right of a judgment creditor of an insolvent corporation to proceed against the holders of stock to the extent of unpaid balances by garnishment, where it is claimed that the stock was fraudulently issued as paid-up stock, and is inclined to the opinion that his remedy is by bill in equity; but as the majority of the court express no opinion upon that question, the rights of the parties in this controversy will be determined upon other grounds.

In the light of the authorities, it is quite clear that no liability attaches to appellees unless the scheme by which the property of the St. Louis Reclining Chair Seat Company was obtained in full payment of the capital stock, was fraudulent. Where paid-up stock is issued for property received, there must be actual fraud in the transaction to render the stockholder liable. Coit v. North Carolina Gold Amalgamating Co., 119 U. S. 343; Handley v. Stulz, 139 U. S. 417. The transaction can not be impeached simply because the valuation turns out to have been excessive, provided the excessive valuation was due to a mistake of judgment. To set it aside there must be proof of bad faith in the transaction. Peck v. The Coalfield Coal Co., 11 Ill. App. 88; The Mallinckrodt Chemical Works v. The Belleville Glass Co., 34 Ill. App. 404; Walburn v. Chenault, 43 Kansas,

352; Young v. Erie Iron Co., 65 Mich. 111; Netherby v. Baker, 35 N. J. Eq. 301; Bickley v. Schlag, 46 N. J. Eq. 533; Boynton v. Hatch, 47 N. Y. 225; Schenk v. Andrews, 57 N. Y. 133; Boynton v. Andrews, 63 N. Y. 93; Douglas v. Ireland, 73 N. Y. 100; Lake Superior Iron Co. v. Drexel, 90 N. Y. 87; National Tube Works Co. v. Gillfillan, 124 N. Y. 302; Fort Madison Bank v. Allen, 129 U. S. 372. The real question in cases of this character is, whether the property was taken at a valuation higher than its actual worth with the fraudulent intent of evading the provisions of the statute. In this case there can be no doubt that the property was taken at an overvaluation, but before appellees can be held to be in default in payment of subscription to the capital stock, it must appear from the evidence that such overvaluation was knowingly and fraudulently made. Such fraud does not appear from the evidence. Mr. S. F. Mc-Kelvey, secretary of the St. Louis company, and one of the parties who negotiated the sale, was introduced as a witness by appellant to sustain the contention that there was a gross overvaluation made with fraudulent intent. He testified that at the time of the sale, he and the others interested, considered the patent and machinery honestly and fairly worth what they were put in at.

This is but one instance of the many in which parties, after investing in a patent with full faith in its worth and virtue, have sadly learned by trial and experience that their judgment and money were misplaced; but that they were acting with fraudulent design does not appear to us, and for that reason the judgment must be affirmed.

*Judgment affirmed.*