## A. W. WALBURN *et al.* WALLER CHENAULT.

1. SUPERSEDEAS BOND — *Exhibit* — *Petition, Not Insufficient.* A petition filed in an action, brought to recover on a supersedeas undertaking, which describes in a general way the execution of the undertaking, the action in which it is given, and the liability which has arisen thereon, and then attaches a copy of the same as an exhibit, which is specifically referred to and made a part of the petition, is not insufficient because the undertaking is not again set out at length in the body of the petition.

2. JUDGMENT, *Assigned* — *Action by Assignee* — *Parties.* Where the judgment superseded was assigned, with an agreement that the proceeds should be paid to several parties, and in which the assignee has a beneficial interest, he may, when a liability arises on the undertaking, bring an action thereon in his own name, without joining with him all the parties who are to receive a part of the proceeds of the judgment and for whose benefit the action is in part prosecuted.

3. ASSIGNMENT, *not Invalid.* The assignment is not rendered invalid for the reason that the attorneys who obtained the judgment claim a lien thereon, and that the assignment was made subject to such lien.

4. CORPORATION — *Shares of Stock, Fully Paid for.* Where property is conveyed to a corporation in payment for certain shares of its capital stock, and the transaction is made a matter of record and subsequently approved and ratified by all the officers and stockholders of the corporation, such shares will, in the absence of fraud, be treated as fully paid, and especially so in a case where a party afterward purchases the same shares of stock, and subsequently becomes a creditor of the corporation by purchasing its mortgage bonds with full knowledge of the nature and terms of the original transaction, and such party or his assignee thereafter seeks to enforce a liability against holders of such stock on the ground that it was not fully paid.

*Error from Bourbon District Court.*

ON November 14, 1887, *Waller Chenault* brought an action against *A. W. Walburn* and *C. F. Drake,* to recover upon a supersedeas bond. The following is a copy of the petition:

"The plaintiff above named, for a cause of action against the defendants, A. W. Walburn and C. F. Drake, says:

"That at the regular September term of this court, 1885, on the 5th day of October, 1885, in a case then pending in the district court of Bourbon county, state of Kansas, wherein Francis Tiernan was plaintiff and the St. Louis, Fort Scott & Wichita Railroad Company was defendant, the said Francis Tiernan recovered a judgment against the said St. Louis, Fort Scott & Wichita Railroad Company for the sum of $20,100.50, and the costs of suit, amounting to $500.

"That afterward the said railroad company took the case to the supreme court of the state of Kansas upon proceedings in error, and filed a supersedeas bond or undertaking in said district court, as provided by law in such cases, to secure the payment of said judgment, interest and costs, should the same be affirmed in said proceedings in error in the supreme court; upon which undertaking the defendants A. W. Walburn and C. F. Drake were sureties for said railroad company. A copy of said undertaking is hereto annexed, marked 'A' and made a part hereof.

"Afterward, for a valuable consideration, the said Francis Tiernan assigned and transferred the said judgment and said undertaking to this plaintiff, who is now the legal owner and holder thereof; that in the supreme court such proceedings were had that said judgment was affirmed by said supreme court, and the liability of said defendants thereby accrued upon said undertaking for the payment of said judgment, interest and costs; that these defendants and the railroad company refused to pay said judgment, interest and costs, or any part thereof; that of the said judgment, the sum of $13,653.30 bore interest at the rate of ten per cent. per annum, and the sum of $6,447.20 bore interest at the rate of seven per cent. per annum, from the date of rendition thereof.

"Wherefore, plaintiff demands judgment against defendants for the sum of $20,600, with ten per cent. interest thereon from October 5, 1885, and for costs herein."

[Here follows exhibit.]

23—43 KAS.

On January 3, 1888, the defendants filed their answer, a copy of which is as follows:

"1. The defendants, for answer, deny all, each and every allegation in plaintiff's petition contained.

"2. The defendants for a second and further answer say, that the St. Louis, Fort Scott & Wichita Railroad Company was incorporated under and by virtue of the laws of the state of Kansas, on February 23, 1880, for the purpose of building a line of railroad from Fort Scott in a westerly direction, with a capital stock of $2,000,000, divided into 20,000 shares of $100 each; that afterward an amended charter was filed fixing the capital stock at $7,000,000, divided into 70,000 shares of $100 each. The defendants further say, that on the 18th day of January, 1887, in a certain suit then pending in the circuit court of the United States for the district of Kansas, in which the Union Trust Company, of New York, was complainant, and the St. Louis, Fort Scott & Wichita Railroad Company, and John F. Dillon and George J. Gould, trustees, were defendants, in the original bill; and John F. Dillon and George J. Gould, trustees, were complainants, and the St. Louis, Fort Scott & Wichita Railroad Company and the Union Trust Company, of New York, were defendants in the cross-bill, the said Dillon and Gould, by the decree of said court, recovered a judgment against the said St. Louis, Fort Scott & Wichita Railroad Company for the sum of $1,077,428.25; and afterward, on the 27th day of May, 1887, the said court rendered a further decree confirming the sale of the railroad and property of the said St. Louis, Fort Scott & Wichita Railroad Company, (made in pursuance of the terms of said decree of January 18, 1887,) wherein and whereby it was ordered, adjudged and decreed that the said John F. Dillon and George J. Gould, trustees, have execution against the St. Louis, Fort Scott & Wichita Railroad Company for the sum of $1,107,386.48, with interest thereon from that date at the rate of — per cent. per annum, which said judgment is still in full force and wholly unsatisfied; and there is now due thereon the said sum of $1,107,386.48, together with the interest thereon as herein stated. The defendants further say that the said Dillon and Gould, trustees, caused an execution to be duly issued against said railroad company, and the same to be placed in the hands of the marshal of the district of Kansas, which was duly returned 'No goods or chattels, lands or tenements found whereon to

levy.' And defendants say that said railroad company was then and now is wholly insolvent, and did not then have, nor has it now, any property out of which any portion of said judgment could be collected.

"The defendants further say that the said Dillon and Gould, trustees, have assigned and transferred the said judgment to these defendants, who are now the owners and holders thereof. The foregoing allegations are introductory to this, the second count of this answer, and form a part of the succeeding count hereof. The defendants, further answering, deny that the judgment obtained in the case of Francis Tiernan against the said St. Louis, Fort Scott & Wichita Railroad Company, and the undertaking executed by these defendants with reference thereto, have been assigned and transferred to the plaintiff for a valuable consideration; and they deny that the plaintiff at the time of the commencement of this action was the legal owner and holder thereof. They say that said pretended assignment was made for the purpose and with the intent of defeating the collection of any claim which these defendants might have against said Tiernan, and was and is colorable, fraudulent and void; and that it was made, if at all, with the intent to hinder, delay and defraud the creditors of said Tiernan of their just and lawful debts.

"The defendants, further answering, say that the said Tiernan, on the 13th day of February, 1881, procured to be issued to him, and as the president of said railroad company did issue to himself $1,200,000 of the capital stock thereof, without having paid anything therefor; and on the 5th day of February, 1883, procured to be issued, and as the president of said railroad company, issued to himself $8,000 of the capital stock thereof, without having paid anything therefor whatsoever, but that the same was issued wholly without consideration. The defendants further say, that at the time of the issuance of said stock to the said Tiernan the plaintiff was acquainted with all the facts concerning the same, and participated in the issuance thereof.

"Wherefore, these defendants pray that the said Tiernan and the plaintiff be required to pay for said stock so issued to said Tiernan an amount equal to any claim which the plaintiff may have against these defendants, and that the said amount so required to be paid by said Tiernan and the plaintiff for said stock be set off against any claim which the plaintiff may have against these defendants.

"3. For a third and further answer, the defendants say that all of that portion of the second count assigned as introductory is true, and it is by reference made a part of this count. And further answering, defendants say, that on the 3d day of February, 1883, at which time the plaintiff was treasurer of the St. Louis, Fort Scott & Wichita Railroad Company, he procured to be issued to himself, without any consideration being paid therefor, $100,000 of the capital stock of said railroad company, and the plaintiff accepted the stock so issued, and received the benefit thereof.

"Wherefore, the defendants pray that the plaintiff be required to pay the par value of said stock, to wit, $100,000, to the end that the same may be applied towards the payment of the judgment which these defendants have against the said railroad company; and if it shall be found that these defendants are indebted to the plaintiff, then so much of said sum of $100,000 may be set off against such indebtedness as equals the same, and that the defendants may have judgment against the plaintiff for the balance. And the defendants pray for all such other, further, and different relief as in law, equity and good conscience they are or may be entitled to."

The reply of the plaintiff was a general denial of the allegations of the answer.

The case was submitted to the court without a jury, and, on February 28, 1888, a judgment was rendered in favor of the plaintiff for $24,343.65. The defendants complain of the judgment, and ask for a reversal.

*J. H. Richards, A. A. Harris,* and *Henry E. Harris,* for plaintiffs in error.

*J. D. McCleverty,* and *E. M. Hulett,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: On October 5, 1885, Francis Tiernan recovered a judgment in the district court of Bourbon county against the St. Louis, Fort Scott & Wichita Railroad Company for $20,100.50, and the railroad company desiring to have the case reviewed in the supreme court, gave a supersedeas undertaking, with A. W. Walburn and C. F. Drake as sure-

ties. That judgment was assigned to Waller Chenault, and affirmed in this court. When the case was finally determined, the railroad company was insolvent, and the assignee of the judgment thereupon brought this action against the sureties on the supersedeas undertaking, and obtained the judgment now sought to be reversed.

One of the points made by the plaintiffs in error against the judgment is, that the petition did not state facts sufficient to constitute a cause of action. The only basis for this claim is the omission of a copy of the undertaking from the body of the petition. In stating the facts upon which the plaintiff relied, the pleader described in a general way the undertaking, the action in which it was given, the result of the action, and the liability which has arisen on the undertaking. He then attached a copy of the undertaking, and expressly states that it is made a part of the petition. What more is required? The copy of the instrument is attached to the petition, and is also made a part of the same. We think the petition was sufficient. (Civil Code, §§ 118, 123.)

1. Supersedeas bond—exhibit —petition, not insufficient.

Another point is that the action is not brought by the real party in interest. The Tiernan judgment was assigned to Chenault in writing, as follows:

"This Instrument Witnesseth: That for value received I hereby assign to Waller Chenault the benefit of the judgment obtained by me in the case of Francis Tiernan v. The St. Louis, Fort Scott & Wichita Railroad Company, obtained in the district court of Bourbon county, Kansas, in October, 1885. The said judgment is for about $19,000; and the entire judg-ment is assigned, subject, however, to a reservation of the un-paid attorneys' fees of E. M. Hulett and J. D. McCleverty, yet unpaid in said case.

This September 24, 1887. FRANCIS TIERNAN."

An entry of the assignment was also appended to the judg-ment on the journals of the district court in which the judg-ment had been given. The consideration for the assignment was a large indebtedness of Tiernan to Chenault's Bank, or

the bank of which he was president, and it was agreed that the proceeds of the judgment should be applied in payment of the indebtedness, and to the discharge of an attorney's lien which had attached to the judgment.   The assignment was absolute, and is such as to vest in the assignee the whole legal title.   He had such a beneficial interest in the proceeds of the judgment that he could bring an action in his own name, without joining other parties, who by collateral agreement might be entitled to a share of the proceeds.   Under § 28 of the code, it is provided that an action may be brought by a "person with whom or in whose name a contract is made for the benefit of another, . . . without joining with him the person for whose benefit it is prosecuted."   The assignee was authorized to receive the proceeds of the judgment, and the assignment is such as to afford complete protection to the plaintiffs in error against a second action by other persons interested in the proceeds of the judgment and to whom the assignee may be required to account.   The plaintiffs in error were not limited or cut off from any defense by reason of the assignment, and the absence of parties to whom the assignee must account cannot cause any future embarrassment to the plaintiffs in error.   In *Williams v. Norton*, 3 Kas. 295, it was held that where a note was assigned to one with a beneficial interest in the proceeds of the same, and with an understanding that he was to receive the money on it, such person was the real party in interest, within the meaning of the code, and might sue in his own name, although he was not entitled to apply to his own use the whole of the proceeds. (*Allen v. Brown*, 44 N. Y. 228; Pom. Rem., § 132.)   The action was
2. Judgment, assigned— action by assignee—parties.
properly brought in the name of the assignee, and no prejudice could result to the plaintiffs in error by his failure to join other parties interested in a part of the proceeds of the judgment, or by his failure to allege his liability to them.

The further point, that the judgment was only partially assigned, cannot be sustained.   Prior to the assignment, the

attorneys who obtained the judgment claimed a lien thereon for their services, but according to the testimony the entire judgment was assigned and was transferred subject to the lien. It cannot be regarded as a splitting-up of the judgment to the annoyance of the debtors, which the law prohibits. The assignee is placed in the position of the assignor, and a discharge can be obtained by the debtors in the same way as though Tiernan still held the judgment. Chenault takes the whole judgment by the assignment, but as we have seen he is required to apply a portion of the proceeds to the discharge of the attorneys' claim.

<span style="margin">3. Assignment, not invalid.</span>

It is next contended that "if the plaintiffs in error are liable in this action on the supersedeas bond, they are entitled to have so much of their claim against Tiernan, on account of the illegal issue of stock, as equals the amount due on the bond set off against the same." This involves one of the questions that was considered and disposed of in the case of *St. L. Ft. S. & W. Rld. Co. v. Tiernan*, 37 Kas. 606. The principal facts are fully stated in that case, and it is needless to repeat them at length here. It appears that Tiernan and his associates, who had purchased the franchises and road-bed of the Fort Scott, Humboldt & Western Railroad Company, organized the St. Louis, Fort Scott & Wichita Railroad Company, in 1880, with an authorized capital of $7,000,000. After the organization was perfected, the new company purchased the property and franchises of the old for $200,000 in cash or bonds, and $3,600,000 of the capital stock of the new company. The stock was issued and delivered in accordance with the terms of the sale among the owners of the old road, but only a part of the cash payment was made. The purchase of the property of the old company was ratified and approved on the 6th of March, 1881, at a meeting of the stockholders of the new company, all of the stock voting in favor of the ratification. Subsequently the company proceeded with the construction of the railroad, but in 1882, Tiernan, who was president of the company, in behalf of himself and his associates entered into negotiations with

the Missouri Pacific Company, or with Mr. Gould in behalf of that company, for the sale of the stock which they owned, and the contract was made by which the stock and interest of the Fort Scott road was transferred to the Missouri Pacific Company for $125,000. This contract was consummated and the transfer completed in February, 1884. In addition to the stock purchased by the Missouri Pacific people, they also came into possession of mortgage bonds issued by the Fort Scott company for the construction of its road, and, default being made, the mortgage was foreclosed in the United States circuit court, and a judgment rendered against the Fort Scott company for $1,107,386.48. An execution was issued on this judgment, which was returned unsatisfied, and the Missouri Pacific people have assigned the judgment to Walburn and Drake, the sureties on the supersedeas undertaking, to protect them from liability on such undertaking, and also with a view of using the same as a set-off against the claims of Chenault, in the present action. With this judgment as a basis, the plaintiffs in error now claim that the shares of stock taken by Tiernan in exchange for the property sold to the railroad company, as well as those purchased by Chenault from Hill, one of the members of the company, were not fully paid, and that Chenault, for himself and as the assignee of Tiernan, may be required to account for that which was not paid, to the extent of his judgment. They seek to have the contract by which the stock of the railroad company was issued in exchange of the old road-bed and other property set aside as fraudulent in this indirect manner, and that, too, where the stock has long since been transferred to the parties whom the plaintiffs in a certain sense represent.

We have only mentioned some of the leading facts in the case, for the reason that a more detailed statement has been given and commented on in *Railroad Company v. Tiernan*, 37 Kas. 606; and the conclusions there reached control to a great extent the disposition of the present case. It is true, as claimed, that the value of the property given by Tiernan and his associates for the stock, was far below its par value; but

the stock of the company at that time was of little value. The transaction received the consent and ratification of all the stockholders, and, as was determined in *Rld. Co. v. Tiernan*, supra, it was fair and open in all respects. The character of this transaction was a subject of consideration in the case of *Stewart v. Rld. Co.*, before the circuit court of the United States, for the district of Kansas, where Foster, J., held that the transaction must be closely scrutinized, and must have been free from fraud or collusion, and characterized by entire good faith. He remarked:

"It does not appear in this case that there was any deception or fraud practiced by the parties. The property was open to inspection, and the approximate cost of constructing it was easily obtainable. Its value to the company for the purpose desired was not difficult to ascertain. I find no evidence of any representations as to its value or cost, or purchase-price, made by the parties selling; but there is record evidence that the board of directors several months after the sale, and with full knowledge of the transaction, formally approved and ratified it; and not only that, but subsequently, at a meeting of all the stockholders, the transaction was again ratified. Now who was defrauded or deceived?" (MS. opinion.)

In both of the cases last mentioned the good faith of this transaction was inquired into and sustained. Although the amount of stock issued for the purchase of the property was large, it had only a nominal value, and it was delivered and treated by all parties as fully paid. The fact that the property was over-valued will not, in the absence of fraud, create a liability against the stockholders. There is no testimony showing false statements by Tiernan or his associates, or any concealment of facts or suppression of the truth by them. Every officer, stockholder and party who had any interest in the company was acquainted with the nature of the transaction and the terms of sale. The records of the corporation disclose all the facts pertaining to the sale, and even the parties who subsequently purchased stock and the mortgage bonds upon which the judgment sought to be set off was rendered, were not deceived or defrauded with respect to the contracts

or capital of the company. There were no creditors of the company then existing, and the mortgage bonds upon which the judgment was rendered against the corporation were not issued for years afterward, and not until after the stock and property of the railroad company had been purchased by the Missouri Pacific people. It is true, that the unpaid subscription to the capital stock of a corporation constitutes a trust fund for the benefit of the creditors. It is also true, that when by any fraudulent device stock not paid for is issued, the holder thereof may in a proper proceeding be required to account either to the corporation or its creditors for that which is unpaid. This is not a proceeding, however, against the stockholders, for the record discloses that Tiernan and Chenault parted with their stock in February, 1884, and transferred it to the parties in whose favor the judgment was rendered. Neither is it a direct action against stockholders to set aside the contract of sale on account of fraud, but this branch of the case is in fact a reëxamination of the question determined in *Rld. Co. v. Tiernan*, supra, except that the defense, instead of being presented by the former parties, is now presented by their assignees.

*Phelan v. Hazard*, 5 Dill. 45, was an action brought by a creditor against a share holder, after the corporation had become insolvent and had been dissolved. Property had been given to the corporation in payment of shares of stock which it was claimed were not fully paid. The record of the corporation showed the whole transaction, and that the property was by agreement received as the consideration for the stock which was issued as fully paid. The proof showed that the shares were paid for exactly as they were originally agreed to be paid for, by a conveyance of property to the corporation, and it was held that the stock must be regarded as paid for and the agreement conclusive unless rescinded or impeached for fraud, and this could not be done unless the attack was directly made. Judge Dillon, who rendered the opinion, stated:

"That the contract is valid and binding upon the corporation and the original share-takers, unless it is rescinded or set

aside for fraud, and that, while the contract stands unimpeached, the courts, even where the rights of creditors are involved, will treat *that* as a payment which the parties have agreed should be a payment."

In addition to the finding in the former case, that the transaction was made in good faith and without fraud, we have the general finding of the district court upon like facts in the present case, in favor of the defendant in error, which must be treated as another finding that the transaction was free from fraud. Judge Thompson, in a discussion regarding the payment of stock by conveyance of property, states the following conclusion:

"A corporation may take in payment of its shares any property which it may lawfully purchase. Such a transaction is not *ultra vires* or void, but is valid and binding upon the original share-takers or corporation, unless it is rescinded or set aside for fraud. While such a contract stands unimpeached, the courts, even where the acts of creditors are involved, will treat that as payment which the parties have agreed should be payment." (Thompson's Liability of Stockholders, § 134, and cases cited.)

If the stock is treated as fully paid, then in the absence of fraud there can be no liability against either the former or the present stockholders. Under the findings of the court, 4. Shares of stock fully paid for. the stock in question must be regarded as fully paid; but even if it was not, then the liability, if any, would arise against the purchasers of the stock from Tiernan and his associates, who are the present holders, and who transferred the judgment in question to be used as a defense by plaintiffs in error. When the parties purchased stock from Tiernan and his associates, they knew how it had been acquired, and the manner and extent of payment that had been made; and if the conveyance of the property was not full payment of the stock, they knew that fact. The transfer of the stock with notice that it was not fully paid, shifts the liability from the outgoing to the incoming stockholders. The vendee is substituted not only to the rights but to the liabilities of the vendor, and, while he holds the stock, may be called

upon for the unpaid subscription. (Angell & Ames on Corp. § 534.) The vendees of the stock in this case not only had a complete understanding of how the stock was purchased and paid for, but it also appears that they paid to Tiernan and his associates only $125,000 for stock of the par value of $3,500,-000. They became creditors of the corporation after they had purchased the stock, as the bonds upon which the judgment was rendered were dated November 1, 1884, and the stock contracted for in 1882 was fully transferred in February, 1884. From these facts it is clear that the transaction complained of could not in any event be regarded as a fraud upon them or upon the assignees of their claim.

It is unnecessary to discuss the principles which would apply if the transaction had been found to be fraudulent, or what would be the rights of an innocent stockholder or creditor against a stockholder who obtained his shares fraudulently, without making payment for the same, in a case where the proper proceeding was instituted to set aside the fraudulent transaction and compel the stockholder to pay the amount due upon his shares. Nor need we enter again upon a discussion of what has already been determined in *Rld. Co. v. Tiernan*, supra.

We find no error in the record, and hence the judgment of the district court will be affirmed.

All the Justices concurring.