Bruner, Receiver of the Crawfordsville Waterworks Co., v. Brown.

No. 17,120.

BRUNER, RECEIVER OF THE CRAWFORDSVILLE WATER-
WORKS COMPANY, v. BROWN.

CORPORATION.—*Promoter's Contract.*—*Ratification of.*—A contract made
by the promoters of a corporation previous to its organization, and
ratified and confirmed by it afterwards, is binding upon the corpo-
ration.

SAME.—*Contracts with Promoters.*—*Payment of Promoter's Services.*—
*Purchase of Property from.*—A corporation has the right to make
contracts with its promoters to pay them for their· services and to
purchase property from them.

SAME.—*Contract.*—*Construction of Waterworks in Consideration of Stock
and Bonds.*—*Value of Stock.*—*Action by Receiver.*—*Fraud.*—Where a
contract is entered into between a waterworks company, which at
the time has no indebtedness, and another, whereby the latter, in
consideration of the construction of the waterworks plant, receives a
certain amount in bonds and a certain amount in paid up stock, and
a statement is filed in the county clerk's office showing that the
stock is paid up by the execution of the contract for the construc-
tion of the works, in pursuance of section 3861, R. S. 1881, thereby
giving notice to all concerned, a receiver of the corporation, suing
for the benefit of creditors, can not recover from a holder the value
of the stock unless the fact of fraud in the transaction is proved and
found.

From the Montgomery Circuit Court.

*S. C. Kennedy, H. J. Milligan* and *P. S. Kennedy,* for
appellant.

*C. Martindale, B. Crane* and *A. B. Anderson,* for ap-
pellee.

DAILEY, J.—This is an action in which the appellant
seeks to recover, for the benefit of the creditors of the
Crawfordsville Waterworks Company, a judgment against
the appellee on a claim alleged to be due from appellee ·
as a holder of alleged unpaid stock in that corporation.
The complaint is in two paragraphs, the first of which is
for the collection of the par value of $20,000 of stock of

said company, which it is claimed the defendant owns, and for which it is alleged nothing has ever been paid to the company.

The second paragraph is to collect upon a subscription of $1,000 of the stock of the Crawfordsville Waterworks Company made by the appellee.

The defendant answered that the $20,000 of stock had been paid for, setting forth the manner in which the same was paid; and also answered that the one thousand dollar subscription to the stock of the company had been paid, setting forth the manner in which the same was paid.

Issues having been made up, the case was submitted to the court for trial, and the court, at the request of the appellant, made a special finding of facts and stated its conclusion thereon, that the plaintiff should recover nothing on either paragraph of his complaint.

As the record is presented to this court, there is but one question that can be properly considered by us, which is: "Did the trial court err in its conclusion of law upon the facts found?" The special finding of facts is quite voluminous, and it is not essential to this opinion that we should embody herein a synopsis of its contents. From the facts found by the court, it appears that the appellee, at the time of the formation of the Crawfordsville Waterworks Company, subscribed for $1,000 of the stock therein, and afterwards became the owner by transfer from Comegys & Lewis, who under contract had constructed the entire waterworks plant of said company, of $20,000 additional stock, making $21,000 of stock held by the appellee in the corporation. In regard to the $1,000 subscription to the stock of the company made by the appellee, it is the contention of the appellant that the appellee will not be permitted to avoid the responsibility which he publicly assumed by the act,

having thereby presumably induced persons to deal with and extend credit to the corporation on the faith of the transaction.

It seems from the record that the appellee and Robert B. F. Peirce and Elijah B. Martindale had obtained from the city of Crawfordsville a franchise to construct waterworks in said city. The franchise belonged to them individually, and not to the Crawfordsville Waterworks Company. They agreed to organize the company, each subscribing $1,000, and to turn the franchise over to the corporation and to do likewise with other contracts they made in relation to the building of waterworks in payment of their subscription to the company. As soon as the company was formed, a resolution was passed by the directors ratifying this agreement. The effect of this contract was that the corporation gave to Brown $1,000 for his interest in the franchise to construct the waterworks in the city of Crawfordsville, which interest was worth more than one thousand dollars, the whole franchise being worth four thousand dollars. It is the law that a contract made by the promoters of a corporation previous to its organization, which is ratified and confirmed by the corporation, after its organization, is as binding as any contract which the organization can make. Corporations have a right to make contracts with the promoters to pay them for their services and to purchase property from them. *Stanton* v. *N. Y., etc., R. W. Co.*, 59 Conn. 272; *Whitney* v. *Wyman*, 101 U. S. 392; *Touche* v. *Metropolitan, etc., Co.*, 6 Ch. App. Cas. L. R. 671; *Bommer* v. *American, etc., Co.*, 81 N. Y. 468; *Davis* v. *Montgomery, etc., Co.*, 8 So. Rep. 496; *Bell's Gap R. R. Co.* v. *Christy*, 79 Pa. St. 54; Morawetz Priv. Corp., sections 545–548.

The chief point of contest in this appeal is upon the payment for the $20,000 of stock held by the defendant.

This stock was received by the defendant from Comegys & Lewis, of New York, the contractors who built the waterworks, as fully paid up stock from the corporation. The corporation had entered into a contract with them by which they were given $150,000 of the first mortgage bonds of the company and $197,000 of the stock of the company fully paid up, in payment for the construction of the works.

In the case of *Coffin* v. *Ransdell*, 110 Ind. 417, and *State, ex rel.*, v. *Sullivan*, 120 Ind. 197, it was held that the receiver of a corporation is bound precisely as it is bound, and occupies the relation to the stockholders that the corporation itself, if waging the suit in its own person, would occupy. This is true although the receiver represents the creditors as well as the stockholders.

In considering the questions involved in this case, we recognize the following well settled principles:

1st. The capital stock of a corporation is a trust fund for the payment of its creditors. *Sawyer* v. *Hoag*, 84 U. S. (17 Wall.) 610; *Upton* v. *Tribilcock*, 91 U. S. 45; *Sanger* v. *Upton*, 91 U. S. 56; *Morgan Co.* v. *Allen*, 103 U. S. 498; *Jackson* v. *Traer*, 64 Iowa, 469.

2d. Capital stock, being a trust fund, may be followed by creditors in any court of equity into the hands of every person who is not a *bona fide* purchaser thereof for value without notice, and such person may be held as trustee to the extent of the trust fund in his hands. *Wood* v. *Dummer*, 3 Mason, 308 (312); *Curran* v. *State of Arkansas*, 56 U. S. (15 Howard) 304; *Taylor* v. *Bowker*, 111 U. S. 110.

3d. A simulated payment of stock is not valid as against creditors. *Wetherbee* v. *Baker*, 35 N. J. Eq. 501.

4th. The directors of a corporation have no power to release a subscriber to its capital stock to the prejudice

·of its creditors. *Burke* v. *Smith,* 83 U. S. (16 Wall.) 395; *Rider* v. *Morrison,* 54 Md. 429; *Bedford R. R. Co.* v. *Bowser,* 48 Pa. St. 37; *Hawley* v. *Upton,* 102 U. S. ·314; *Webster* v. *Upton,* 91 U. S. 65.

5th. ·An agreement between a corporation and its stockholders that the stock shall be considered fully paid and nonassessable is binding on the corporation, and estops it from making any further calls on the stockholders. But if the corporation become insolvent, such agreement ·does not estop unsatisfied judgment creditors of the corporation from subjecting the unpaid balance on the stock to the payment of their judgments. *Scovill* v. *Thayer,* 105 U. S. 143; *Drury* v. *Cross,* 74 U. S. (7 Wall.) ·299; *Jackson* v. *Ludeling,* 88 U. S. (21 Wall.) 616.

Having regard for these principles and such others as .are applicable to this case, we will briefly examine the facts as they are disclosed by the record.

It is clearly found by the court that at the time the contract between the waterworks company and Comegys & Lewis was entered into, the corporation had no indebtedness; that every person who had any interest therein had actual knowledge of everything pertaining to the transaction; that a statement was filed in the office of the clerk of the Montgomery Circuit Court in pursuance of section 3861, R. S. 1881; Burns R. S. 1894, section 5062, showing the manner in which the stock was paid up by the execution of the contract for the consideration of the works, so that every one thereafter dealing with the corporation had notice of this transaction. The certificate so filed was a public record required by statute. It was an act done in a public office, open for the information of all parties interested. As such, they were bound to take notice of it. *Maddux* v. *Atkins,* 88 Ind. 74; *Sanders* v. *Muegge,* 91 Ind. 214.

This rests upon the doctrine of presumptions; for it

is a presumption of law that every one will take care of his own concerns; thus the owner and vendor shall be presumed to know of the patent defects in the thing sold. *Lane* v. *Shears*, 1 Wend. 434; 1 Phillips on Ev. 500, section 606.

It has been held that creditors can not complain that a transaction by a corporation prior to the creation of their claims, and of which they are presumed to have had notice, was fraudulent as to creditors. *Rollins* v. *Shaver Wagon, etc., Co.* (Iowa), 45 N.W. Rep.1037 (1040); *Walburn* v. *Chenault*, 43 Kan. 352.

The case of *Coffin* v. *Ransdell*, *supra*, announces two distinct propositions applicable to this case:

1. That any property which a corporation is authorized to purchase, or which is necessary for the purpose of its legitimate business, may be received in payment for its stock.

2. That a transaction by which property is given to a corporation in payment for stock, is binding so long as it is not impeached by the corporation or its assignee, and it can be impeached only for fraud upon the corporation.

There is a long line of decisions that support the doctrine as stated and upholds the principle declared in *Coffin* v. *Ransdell*, *supra*.

In *Fogg* v. *Blair*, 139 U. S. 118, there was a contract between Blair and a railroad corporation by which Blair took stock and bonds for the construction of the road. The bill alleged that the work was not worth more than the bonds, and that there was no consideration paid for the stock, and that the agreement was only colorable, and a means to get the stock for nothing, and was a fraud on creditors. This is the identical theory assumed by the learned counsel in the case at bar. The prayer was that Blair be compelled to pay the par value of the stock.

The court held that a demurrer to the bill was properly sustained, because it was not shown that the stock had any value. The court said: "If, when disposed of by the railroad company, it was without value, no wrong was done to creditors by the contract made with Blair & Taylor." The value of the stock is the essential thing to be proved in such an action.

In *Clark* v. *Bever*, 139 U. S. 96, the defendant held a claim for construction against a railroad amounting to $70,000. He accepted in payment stock at twenty cents on the dollar, or $350,000. A creditor brought suit asking that he be compelled to pay the balance on his judgment. It was held that as the stock was, at the time of the transfer to defendant by the company, of no market value, the transaction was fair, and there was no liability.

In *Handley* v. *Stutz*, 139 U. S. 417, the facts were thus stated in the opinion: "Some three years after the company was organized it became apparent that the enterprise, as originally contemplated, namely, the mining and selling of coal for steam and domestic purposes, was not likely to be a success, owing to the inferior character of the product; and the only hope of the company lay in the manufacture of the coal into an iron-making coke, that is, a coke containing a percentage of sulphur low enough to admit of the manufacture of merchantable pig-iron. To embark in this, however, money was needed, and as the stock of the company was not worth more than fifty cents on the dollar, it was evident that this could not be effected simply by the issue of new stock. It was proposed at the meeting in March that money should be raised by the issue of $50,000 of bonds, with which to add the requisite structures to the plant. But it was soon evident that the bonds could not be negotiated without the stock, and, acting upon the

suggestion of a Nashville banker, it was resolved at the meeting in May that the stock should be increased eight hundred shares, five hundred of which should be turned over to the subscribers to the bonds, as a bonus or an additional consideration." The transaction was upheld in an exhaustive opinion.

In *Bickley* v. *Schlag*, 46 N. J. Eq. 533, the chancellor says: "The inquiry, therefore, in the court below, should have been, whether the agreement in question was fraudulent or not; for, if the transaction was an honest one, the difference in value between the property constituting the consideration of the sale and the stock had no legal significance. The character of this company authorizes the corporation to exchange its capital stock for property, and, under that condition of things, a court of equity can not set aside a transaction of that kind simply on the ground that the bargain, on the side of the corporation, is a disadvantageous one. In such affairs the company and the purchaser stand on the common footing of buyer and seller; the valuations of property in making the exchange, either on the one side or the other, can not be supervised or controlled by the court of chancery, for, in the absence of deceit, or some other corrupt constituent, the bargain between the parties can not be disturbed. In the present instance fraud was not found, and the vice-chancellor ordered these stockholders to pay more than they had agreed to pay for the stock, on the ground that, in his opinion, the steamboats and other things they had exchanged were not worth as much as the stock was worth. Conspicuously the substance of the true issue has been overlooked." The case was reversed for the reason the trial court failed to find any fraud or deceit in the transaction.

In *Du Pont* v. *Tilden*, 42 Fed. Rep. 87, the United

States Circuit Court cited and followed the case of *Coffin* v. *Ransdell, supra.*

These propositions are also sustained in *Mallinckrodt Chem. Works* v. *Belleville Glass Co.,* 34 Ill. App. 404; *Whitehill* v. *Jacobs,* 75 Wis. 474; *First Nat'l Bank, etc.,* v. *Gustin, etc., Mining Co.,* 42 Minn. 327.

In the last case the court said: "While the courts have not always had occasion to state the limitations upon the doctrine that 'the capital is a trust fund for the benefit of creditors,' yet we think that it will be found that in every instance where they have impressed a trust upon the subscription of the shareholders, it has been in favor of creditors becoming such afterwards, and hence fairly to be presumed as relying upon the amount of capital which the company was represented as having. We are referred to none, and have found none, where any such trust has been enforced in favor of creditors, *who have dealt with the corporation with full knowledge of the facts.* The reason is apparent, for in such cases no fraud, actual or constructive, has been committed on such creditors. * * This doctrine with respect to trusts has no application to a case where a party, like the plaintiff, was cognizant of the whole arrangement under which the stock of the defendant company was issued, and of what was paid or intended to be paid for it, and who accepted a novation of its debt with full knowledge of these facts, and received as great or greater security * than it had before. To hold otherwise would be to perpetrate a fraud on the stockholders and not on the creditors."

This proposition is upheld in *Walburn* v. *Chenault,* 43 Kan. 352; *Callanan* v. *Windsor,* 78 Iowa, 193, and in *Knoop* v. *Bohmrich,* 49 N. J. Ch. 82, 23 Atl. Rep. 118.

It is impossible to separate the consideration in the contract between Comegys & Lewis, and the waterworks

company, and hold that the $150,000 of bonds were given in consideration of the construction of the works, and that the stock was turned over to Comegys & Lewis without any consideration. The contract was an entirety. The consideration on both sides was entire. On the part of Comegys & Lewis, it was the building of the waterworks. On the part of the company it was the stock and bonds. It would be absurd, under the circumstances, to say that the stock was the consideration and the bonds were a gift, or that the bonds were the consideration and the stock was a gift. This suit was instituted upon the theory that nothing had been paid for the stock.

The special finding of facts shows that a valid contract was made by which certain property which the company had a right to acquire and use in its business, was turned over to the company in payment for its stock, and this contract was fully executed on both sides. There is nothing in the special finding of facts tending to show that there has been any fraud to vitiate the contract and this court can not presume a condition to exist that does not so appear.

In *Parke County Coal Co.* v. *Terre Haute, etc., Co.*, 129 Ind. 73 (81), the well-established doctrine was announced, that the burden is upon the appellant to prove fraud. It is the rule in this State that fraud is never presumed, but must be proven, and the presumption is always against bad faith. *Stix* v. *Sadler*, 109 Ind. 254 (258); *Wallace* v. *Mattice*, 118 Ind. 59; *Stewart* v. *English*, 6 Ind. 176; *Morgan* v. *Olvey*, 53 Ind. 6.

There is no such thing in Indiana as fraud in law in transactions of this kind. Fraud, actual or constructive, is a question of fact. *Rose* v. *Colter*, 76 Ind. 590; *Cicero Tp.* v. *Picken*, 122 Ind. 260 (263); *Phelps* v. *Smith*, 116

Ind. 387 (393-4); *Caldwell* v. *Boyd*, 109 Ind. 447 (455-6); Burns R. S. 1894, sections 6645 and 6649.

The special finding must state ultimate facts not evidence.

"Where fraud is essential to the existence of a cause of action it must be found and stated in the special finding as a substantive fact or the plaintiff will suffer defeat." *Wilson* v. *Campbell*, 119 Ind. 286 (289–290); *Citizens' Bank* v. *Bolen*, 121 Ind. 301 (305); *Bartholomew* v. *Pierson*, 112 Ind. 430 (432).

These principles apply as well to contracts and transactions, such as the one under consideration, as to conveyances, as is shown in *Caldwell* v. *Boyd, supra,* which was a case involving a trust.

This court so held in *Farmers' Loan, etc., Co.* v. *Canada, etc., R. W. Co.*, 127 Ind. 250, being an action involving a contract between a railroad company and a construction company, wherein the former agreed to pay the latter with its stock and bonds. On page 269, the court said: "Cross-errors alleged by some of the appellees, present questions which require consideration. The first of these questions arises on the claim put forward by counsel that the transaction between the Burns Construction Company and the railway company was a fraud upon the rights of the creditors. While there are circumstances indicative of fraud, there is no finding that there was fraud in fact, and hence the complaining appellees are not entitled to judgment, upon the ground that the transaction was a fraud upon their rights. It is settled by our decisions that fraud must be found and stated as an inferential or ultimate fact, and that it is not sufficient to state badges of fraud, or the evidences of fraud, in a special finding."

In *Parke County Coal Co.* v. *Terre Haute, etc., Co., supra,* it was held that the burden is upon the appellant to prove

fraud; that the finding being silent on the subject of fraud, the conclusion follows that none exists, and that none was proven.

It seems well settled that when a finding is silent upon a fact material to be found, it is to be taken as found against the party having the burden of proving such fact. *Brazil, etc., Coal Co.* v. *Hoodlet*, 129 Ind. 327; *Westfield, etc., Co.* v. *Abernathy*, 8 Ind. App. 73.

Where the special findings made by the court indicate perfect good faith, and the presumption of good faith is not impeached by any finding or conclusion, we can not reverse the judgment of the lower court. It is only in cases where the trial court has found as a substantive fact that the transaction was infected with fraud that the courts of appeal will denounce contracts by which property has been transferred to a corporation at a gross overvaluation.

The judgment is affirmed.

Filed Oct. 11, 1894; petition for rehearing overruled Dec. 20, 1894.