# APPELLATE COURT

OF THE

## STATE OF INDIANA,

AT INDIANAPOLIS, NOVEMBER TERM, 1895, IN THE EIGHTI-
ETH YEAR OF THE STATE.

---

No. 1,869.

INDIANA NOVELTY MANUFACTURING CO. *v.* McGILL.

PLEADING.— *Counterclaim.— Set-off.— Action by Assignee of Note.—*
*Private Corporation.*—In an action on a note given in payment of
stock in a private corporation, by the assignee of the note, the note
having been assigned as collateral security for a debt past due and
unpaid, and the assignor having become insolvent, the maker of the
note, who is a stockholder and officer of the assignor company, has
the right to set up a counterclaim or set-off as a defense to the note,
an obligation running from him to the assignor.

CORPORATION.—*Insolvency.—Stock and Notes Due for Shares Held in*
*Trust.*—If a company becomes insolvent and ceases operations, the
fund represented by the stock and by the subscriptions of notes due
from the shareholders for the same becomes a trust fund for the
payment of debts due the creditors of the concern, and cannot be
absorbed in whole or in part by the stockholders who are also officers
of the corporation, in payment of claims, real or fictitious, alleged
to be due them.

SAME.—*Liability of Stockholders to Creditors of Corporation.*—*Capital Stock.*—Capital stock being the stake or pledge upon which the corporation obtains credit, nothing short of actual payment would satisfy the claims against the stockholders, at least to the extent of the purchase-price of the stock, if not the full face value thereof.

SAME.—*Insolvency.*—*Action by Creditor to Compel Assessment of Delinquent Subscribers.*—If a debtor of an insolvent corporation has a right to its proportional part of the capital stock, it should bring an action in equity to compel an assessment upon the several delinquent subscribers to an amount necessary to pay all debts of the defunct company.

From the Porter Circuit Court.

*Crumpacker & Crumpacker*, for appellant.

*A. D. Bartholomew*, for appellee.

REINHARD, J.—This action was brought by the appellant, against the appellee, on a promissory note which reads as follows:

"$2,000.00       CHICAGO, Ill., February 23, 1892.

"Nine months after date, I promise to pay the DuLaney Clock Company, of Chicago, in the State of Illinois, the sum of two thousand dollars, the consideration thereof being the issue to me of eighty shares of the fully paid-up stock of said company, of the par value of eight thousand dollars, and I reserve the option of paying this note by the return of said stock to said company at the maturity thereof.

                     (Sig.)     "JAMES M. McGILL."

The note was assigned by the DuLaney Clock Company to the appellant.

The complaint avers that the defendant, on the 23d day of February, 1892, executed his note for the sum of $2,000.00, to the DuLaney Clock Company, for eighty shares of its capital stock; that it was provided in said note that said McGill should have the option of paying the same, at its maturity, by the

surrender of said eighty shares of stock to said company; that a copy of the note is filed with the complaint. It is further averred that said McGill did not elect to pay said note by returning the stock, and has ever since retained it; that the note is due and unpaid, and that the DuLaney Clock Company, for a valuable consideration, sold and endorsed said note to the plaintiff who now owns it.

To this complaint the appellee filed an answer in ten paragraphs, the second and sixth of which alone remain in the record. The second paragraph is in the nature of a counterclaim, and in substance as follows: The defendant admits the execution of the note sued on, but says that as a part of the transaction involving the execution of said note, he and said clock company entered into a written contract, a copy of which is filed with this answer and made a part of the same; that by the terms of said contract he purchased two hundred and fifty shares of the paid-up capital stock of said DuLaney Clock Company, the payee, and agreed to pay therefor the sum of $6,250.00, a part of which was paid then and there in cash, and his notes were given for the residue, as appears from the terms of said contract and in accordance therewith; that said note represents a part of said consideration, and is described in said contract; that all of said consideration except said note has been fully paid; that as a further consideration for the purchase of said stock, and the payment of said money, and the execution of said notes, said payee agreed to employ this defendant, in the business in which it was to be engaged, at a salary of $2,500.00 a year, and to carry on its business for a period of five years in the city of Valparaiso, in the State of Indiana; that the stock so purchased had no market value, and was not marketable; that the DuLaney Clock Company was organized for the pur-

pose of the manufacture and sale of clocks to be run by electricity; that the patent which was to run said clocks was new and untried, and the project for the manufacture of clocks was untried and experimental; that after the said contract and note were executed, said company began the manufacture of clocks at Valparaiso, and said defendant went to work for said company under said contract, first as secretary and treasurer, and afterwards as president of the company, and so continued to labor and give his time, according to said contract, to said company's business for one year, and to the first day of February, 1893; that during said time he received, as a part compensation for his services, the sum of $500.00; that on said date the company, without cause, discharged him and refused to give him employment in its business, and refused and failed to pay him his salary; that the defendant all the time has been ready and willing to perform the labor contracted for; that, afterwards, on the —— day of ————, 1893, said company became insolvent and entirely failed, and its assets and affairs at the instigation of its officers were put into the hands of a receiver, with the purpose and intent of winding up and closing out its affairs and going out of business; that said company has ceased to manufacture clocks in Valparaiso, as it stipulated to do in said contract; that said defendant, at the time of the execution of said contract, owned real estate in Valparaiso, and paid taxes in the county in which the city was situated, and was interested in the rise in value of real estate in said city; that the value of real estate would be greatly enhanced by the location and maintenance of said factory in said city; that by reason of the refusal and failure of said company to employ, and its inability to carry out and perform its contract to furnish him employment as stated in said contract, and

by reason of the failure to pay him what said company owed him on said contract and to locate said factory in Valparaiso, he has suffered damages in the sum of $5,000.00.

The agreement, a copy of which is filed with' the foregoing answer, is as follows:

"Memoranda of an agreement between the DuLaney Clock Company, of the first part, and J. M. McGill, party of the second part. It is hereby agreed by and between the above parties, that the said party of the first part shall sell and deliver to said party of the second part two hundred and fifty shares of the fully paid-up stock of the said DuLaney Clock Company, of the par value of $100.00 per share, and also the said party of the first part shall make the said McGill the secretary and treasurer of the said DuLaney Clock Company, at a salary of $2,500.00 per year payable monthly, beginning on the 23d day of February, 1892, and shall continue in the business specified by the charter of the said company, at the city of Valparaiso, in the State of Indiana, for a period of five years from date hereof, and shall continue said McGill in said office or in their employ at not less than said salary for said period, if he will so elect. And, in consideration of the foregoing, said McGill agrees to perform the duties of said offices while incumbent therein, and pay for said stock $6,250.00, in manner as follows, to-wit: $1,000.00 in cash; $1,250.00 in three months; $2,000.00 in six months, and $2,000.00 in nine months, said deferred payments to be evidenced by notes, which notes may be payable in cash or in the return of said stock of said company, at the purchase-price aforesaid, at the option of the said McGill. The said notes to draw no interest, and the stock to draw no dividends until paid for in cash; said option to be embodied in said notes.

In witness whereof the said parties have hereunto set their respective hands and seals, this 23d day of February, 1892, said DuLaney Clock Company having caused its signature and seal to be herewith affixed by its proper officer."

The second paragraph of the answer is a set-off, and alleges that the defendant admits the execution of the note; but says that prior to any notice of any assignment thereof to the plaintiff, said DuLaney Clock Company, payee therein, became and was indebted to the defendant for work and labor done for said company, and at its instance and request, in the sum of $2,500.00, and also for goods and money furnished and paid out for said payee, at its instance and request, a bill of particulars of which is filed herewith and made a part of this answer.

The bill of particulars filed with this paragraph of answer is set out in the record.

To the foregoing paragraphs of answer the appellant replied as follows: "For a further and second cause of reply to so much of the defendant's answer as relates to the matter of set-off and counterclaim, the plaintiff says that the DuLaney Clock Company was a corporation organized in the year 1891, with a capital stock of $300,000.00, divided into 3,000 shares of $100 each; that on the 23d of February, 1892, the defendant herein bought of said DuLaney Clock Company 250 shares of its capital stock of the face value of $25,000.00, for which he undertook and agreed to pay the sum of $6,250.00, one fourth of the face value of the stock; that the note in suit was given for eighty of said two hundred and fifty shares, and said eighty shares were of the face value of $8,000.00; that said defendant gave no other, greater, or different consideration for said stock than that above mentioned; that immediately thereafter, the defendant became a

director and officer of said company, and continued to be one of its directors and officers and to manage its affairs until in May, 1893, when he was removed from office; that the defendant continued to be a stockholder, holding at the time the said 250 shares of stock, and he has ever since held and still holds the same; that plaintiff sold and delivered to said DuLaney Clock Company, during the time said defendant was an officer and manager of said company as aforesaid, clock cases and other materials to be used in its business, and at its special instance and request, to the amount and value of $2,000.00, which amount has never been paid; that said DuLaney Clock Company promised, undertook, and agreed to pay that amount for said clock cases, materials, etc., furnished by plaintiff as aforesaid; that in the month of June, 1893, the said clock company was in embarrassed circumstances and the plaintiff's claim was past due, and the said DuLaney Clock Company, in good faith, assigned and transferred to this plaintiff, as collateral security for said indebtedness, the note sued upon in the complaint herein, which note was then and there past due and wholly unpaid; that the said DuLaney Clock Company shortly thereafter ceased operation, and its affairs were put in the hands of a receiver, and it became and was and ever since has been wholly insolvent and has no assets with which to pay any part of its general debts, except its claim against the defendant for the unpaid balance for his said stock, as shown here, and a like claim against several other persons who are nonresidents of the State of Indiana, in relation to whose solvency the plaintiff is unadvised; that the plaintiff's said $2,000.00 claim is long past due and wholly unpaid; that the defendant, McGill, is indebted to the creditors of said DuLaney Clock Company for the balance of his stock as afore-

said, to-wit: $18,750.00, which is and was at the commencement of this action due and wholly unpaid; that he only paid $6,250.00 thereof, including the note in suit as aforesaid, and the face value of said stock was $25,000.00 as aforesaid; that the creditors of said DuLaney Clock Company have the right, in law and equity, to require the defendant to pay the full face value of his stock if that should be necessary to pay the debts; that said DuLaney Clock Company has a large amount of other general indebtedness, to-wit: $25,000.00, and all of said defendant's indebtedness, as aforesaid, will be required to pay such debts, and then not to exceed 50 per cent. thereof can be paid; that the affairs of the said DuLaney Clock Company are in process of settlement in the Porter Circuit Court, but no suit has ever been brought against the defendant herein, for said balance due from him as aforesaid; that the plaintiff was and is a general creditor of the said DuLaney Clock Company, to the amount of $2,000.00, as aforesaid, and as such has and had the right to insist upon the said defendant paying full face value of the stock, and, if the defendant's set-off be allowed, the plaintiff will be defeated in his right to full payment and will be compelled to pro rate with other general creditors who have no security as aforesaid.

"Wherefore the plaintiff says that, in equity and good conscience, the defendant ought not to be permitted to set up and assert a set-off or counterclaim against the note sued upon by plaintiff as aforesaid; but that if he have any claim against said company, he be required to set it off against the amount he owes the creditors of said company, on his purchase of stock as aforesaid."

To this paragraph of reply the court sustained a demurrer, and this ruling is assigned as error.

The controlling question raised by appellant's learned counsel relates to the right of the appellee to set up a counterclaim or set-off as a defense to an obligation running from him to the DuLaney Clock Company, an insolvent corporation, of which appellee was a stockholder and officer.

It appears that appellant, while the appellee was an officer and stockholder of the clock company, sold to it certain articles of merchandise needed in its business, of the value of $2,000.00, which amount is still unpaid; and that the note in suit was assigned to it as collateral security for said debt, after the same was past due and wholly unpaid, at a time when the company was in embarrassed circumstances and shortly after which it was put in the hands of a receiver.

When the company became insolvent and ceased operating, the fund represented by the stock and by the subscriptions of notes due from shareholders for the same became a trust fund for the payment of debts due the creditors of the concern, and could not be absorbed, in whole or in part, by the stockholders who were also officers of the corporation, in payment of claims, real or fictitious, alleged to be due them. Nothing short of actual payment would satisfy the claims against the stockholders, at least to the extent of the purchase-price of such stock, if not the full face value thereof. The capital stock is the stake or pledge upon which the corporation obtains credit. The stockholders who have not paid in are at least constructive trustees for the creditors, and courts of equity, in this country, will compel them to surrender up the fund for the benefit of such creditors. Thompson Corp., sections 1573, 2951, *et seq.* In *Sawyer* v. *Hoag*, 17 Wall. 610, it was said by the Supreme Court of the United States: "Though it be a doctrine of modern date, we think it now well established that the capital stock of

a corporation, especially its unpaid subscriptions, is a trust fund for the benefit of the general creditors of the corporation. And when we consider the rapid development of corporations as instrumentalities of the commercial and business world in the last few years, with the corresponding necessity of adapting legal principles to the new and varying exigencies of this business, it is no solid objection to such a principle that it is modern, for the occasion for it could not sooner have arisen."

In the case from which we have quoted, a debt due from a stockholder, for subscription to the capital stock of a fire insurance company, was sued upon and attempted to be met by a set-off in the form of a certificate for an adjusted loss by fire due from said company, which the maker of the note had purchased at 33 cents on the dollar of its par value. The company having been thrown into bankruptcy, the assignee attempted to collect the note, which was found among the assets of the insolvent company, and the maker produced the adjusted certificate and offered to set it off against the note. The assignee refused to allow the set-off, and the maker of the note filed a bill in the court to enforce it. The court sustained the assignee, however, and on appeal the Supreme Court affirmed the decision. The latter court held that there was no mutuality between the claims; that the debt of the maker of the note was a trust fund belonging to all the creditors of the insolvent company; that as soon as the company became insolvent and that fact became known to the debtor, the right of a set-off for an ordinary debt ceased, and the fund he owed belonged equally in equity to all the creditors and could not be appropriated by the debtor to the exclusive payment of his own claim. See, also, *Handley* v. *Stutz*, 139 U. S. 417; *Hollins* v. *Brierfield Coal and Iron Co.*, 150 U. S.

371; *Emerson* v. *Senter*, 118 U. S. 3; *Sutton M'f'g Co.* v. *Hutchinson* (C. C. A. 7th Cir.), 63 Fed. Rep. 496.

When the corporators organize and proceed to transact business on the capital stock fixed in the charter, without having paid in the same, they commit a legal fraud by so doing, and are liable to creditors to make good at least what they had agreed to pay for such stock, if not for the entire amount of the minimum capital stock provided for. In such cases the officers are not allowed to retain amounts to themselves in payment of salary. *Burns* v. *Beck* (Ga.), 10 S. E. Rep. 121.

An authority of high standing says upon this subject: "It seems to be well established that, when a corporation has become insolvent, and the subscriptions for the stock are being enforced for the benefit of corporate creditors, a subscriber cannot, in the suit brought to collect his subscription, set up a counterclaim or set-off. This rule is founded in equity and wise public policy. The stockholder is not deprived of his remedy for the debt due him from the corporation; but he is obliged to proceed in the same manner, and is allowed to participate in the final corporate assets, to the same extent, and at the same time, as the other creditors." Cook, Stock and Stockholders and Corp. L., 3 ed., section 193. See, also, Morawetz, Priv. Corp., section 787, *et seq.*

This doctrine is fully recognized by the Supreme Court of this State. *Bruner, Rec.,* v. *Brown,* 139 Ind. 600, 603.

If this action were by the receiver of the clock company against the appellee on this note, the latter, under the authorities referred to, could not properly avail himself of the debt claimed by him against said corporation, for his salary, as a counterclaim or a set-off, for by doing so he would gain a preference for his

own over the claims of other creditors of the insolvent corporation. In that case he could bring his separate action against the corporation for whatever debts it owed him, and share *pro rata* with the other creditors in collecting his claim out of the assets; but he would not be absolved from his obligation as a stockholder to the creditors, except by the actual payment of the money owing on his subscription. Even in that case, however, the appellee might have a right to his counterclaim if the contract set up by him in the answer were such as might be regarded as an agreement that he should pay for his stock, or a portion thereof, in rendering services to the company. Morawetz Priv. Corp., section 825. But we do not decide whether this is that kind of a contract or not.

As we have seen, the note was assigned by the clock company to the appellant as collateral security for a *bona fide* debt, long before the company went into the hands of a receiver. The corporation still owes the appellant this debt, for the assignment of the note did not extinguish it; and upon failure to collect the same from the appellee, the note can still be filed with the receiver, or in court, as a claim against the said corporation.

As between the appellant and the appellee, when the note was assigned, no such fiduciary relationship subsisted as that which the clock company sustained to its creditors. As between the appellant and the appellee, the claim which the appellee then had, for services rendered the company, was just as valid and of as high a character, in the absence of any showing of fraud, as the claim of the appellant for goods sold to the clock company; and the note not being governed by the law merchant, all the defenses which the appellee had to it, at the time the appellant received it, still exist against it and are available to him.

Again, the appellant's action is simply an action at law upon the note. It is not a proceeding in equity to reach the assets of the insolvent corporation for the benefit of creditors. No account could be taken in such an action of the debts and credits, and it could not be made to appear as to what other debts and other delinquent stockholders there were, and what available assets could be brought into the common fund to satisfy the creditors. Hence, the rules as to set-off or counterclaims obtaining in an equitable action to reach the assets, where such accounts may be taken, do not apply. Morawetz Priv. Corp., section 898.

It is settled law in this State that when a receiver is in charge of a corporation, a creditor cannot maintain a suit to reach assets withheld from the corporation. *First Nat. Bank* v. *Dovetail Body and Gear Co.,* 143 Ind. 534.

It is our conclusion that there is nothing in the condition of things created by the averments of the reply, when taken in connection with the answers to which it is addressed, that destroys the mutuality between the cross-demands, as contended by appellant's counsel, and, unless it be for some reason not yet disclosed, the appellee had a right to maintain his counterclaim and set-off in the present action.

It is insisted, however, that appellee had no right to assert these cross-demands for the further reason that according to the averments of the reply the entire amount of stock for which he was indebted was $25,000.00; and that, therefore, he is still liable to the creditors for a balance of his stock, taken at its face value of $18,750.00.

Assuming, without deciding, that as between the appellee and the creditors of the insolvent corporation, the former is liable for the entire face value of the

stock, without reference to its actual value or its purchase-price, it does not follow that the appellee can be deprived of the right to his set-off or counterclaim in this action. The amount for which appellee may be liable cannot control the question as to whether or not he is entitled to his counterclaim or set-off. As before observed, the appellant is not in a position to raise that question here. If it has a right to its proportional part of the capital stock of this corporation, to the full extent that the same was subscribed, it should apply to a court of equity to compel an assessment upon the several delinquent subscribers, to the amount necessary to pay all the debts of the defunct company. Thompson, Corp. 2960, 2961.

It is plain to our minds that the result sought by appellant's learned counsel cannot be worked out by the method here adopted. For aught that appears, there may be and are other delinquent stock-subscribers besides the appellee, and there certainly are other creditors besides the appellant. How could it be ascertained, without having these parties and also the clock company before the court, what proportion of the appellee's delinquent subscription is required, and what proportion the appellant is entitled to have applied to the satisfaction of its claim? If the appellant has the right to pursue the delinquent subscribers and compel them to contribute a sufficient amount to liquidate its claim, the fact that the counterclaim or set-off is allowed the appellee in the present action, will not debar appellant from the full benefits of that remedy. It may apply to the court that appointed the receiver to order the latter to institute suit for the unpaid subscriptions, and whenever the several parties are brought into a court of equity, all their respective rights may be adjusted.

We think the court committed no error in sustaining the demurrer to the reply.

Judgment affirmed.

Filed April 2, 1896.